B. R. WALLACE AND OTHERS V. WILLIAM WILCOX AND OTHERS.

An instrument of writing executed by L. J., in which he recites, that for and in consideration of one hundred dollars to him in hand paid, and for the further consideration of other money to be paid to the general government, he bargained and sold to J. S. the south half of the league of land on which he resides, and bound himself to make to J. S., his heirs or assigns, a deed in fee simple as soon as he could do it according to law, was held to be a bond for title, and not an absolute conveyance.

Possession by a tenant will support the plea of the statute of limitation of three years in favor of the landlord.

The declarations of a tenant, as to the character of his possession, made when about to enter into possession, or while in possession, in disparagement of his own title, are admissible in evidence in support of the title of his landlord, in a suit of trespass to try title, brought by a third party against himself and his landlord.

One of the defendants, in a suit of trespass to try title, made oath that the original deeds had been lost, that he cannot procure the originals, that he has made diligent search for the originals in the places where the same were most likely to be found ; it was held to be a sufficient compliance with the statute to lay the foundation for the introduction of copies.

APPEAL from Cherokee. Tried below before the Hon. R. A. Reeves.

This was a suit of trespass to try title brought by Benjamin R. Wallace and William W. Wallace, appellants, against William Wilcox, one of the appellees, for a half league of land in Cherokee county. William Wilcox stated, that he was tenant in possession under William Scott and Edmund Scott, and disclaimed all title in himself. William and Edmund Scott, by petition, alleged that they were the real owners of the land, and prayed to be made parties defendant. Rebecca R. Wallace intervened and claimed a life estate in the upper half of the half league in controversy.

On the trial, by consent, the original grant to Levi Jordan of one league of land, under which all parties claimed, was read in evidence.

The plaintiff then introduced in evidence the following instrument, to wit:

Wallace v. Wilcox.

"Under the consideration of one hundred dollars to me in hand paid, and furthermore for and in consideration of other moneys which are to be paid to the general government, I do by these presents bargain and sell to Jeremiah Strode one equal half of the league of land on which I now live, which being the lower or the south end, and I do bind myself and heirs to make to the said Strode or his heirs or assigns, a deed in fee simple as soon as I or they can do it according to law. In testimony whereof, I have hereunto set my hand and seal this 4th day of February, in the year of our Lord 1835.

"LEVI JORDAN, [L. S.]

"Attest, W. R. PEYTON,
    "THOS. J. RUSK,
    "JOHN M. DOR."

He also read deeds from Jeremiah Strode to B. R. Wallace, and from the latter to W. W. Wallace, for the upper half of the half of the league for the use of Rebecca Wallace during her life.

Defendants read in evidence a certified copy of a deed from Levi Jordan and Cynthia Jordan his wife, to Jesse Duren; also, a certified copy of a deed from the latter to M. Y. Lacey, and a deed from him to defendants.

As a foundation for the introduction of certified copies of the foregoing deeds, William Scott, one of the defendants, made affidavit that "the original deeds have been lost, that he has made diligent search for said originals in the places where the same were most likely to be found." Defendants then introduced witness, Elias Nelson, and offered to prove by him the time when Wilcox entered upon the land, and that he, at the time, declared that he entered as tenant for Scott. To which plaintiffs objected, because defendants could not avail themselves of the possession of the tenant Wilcox under the plea of the statute of limitation of three years, unless they showed a written tenancy or contract of tenancy between the defendants Scott and Wilcox, and because the declarations of Wilcox were not proper evidence of the contract of tenancy, and could not be given to sustain the pleas of the statute

of limitation for the defendants Scott, or that Wilcox was their tenant. The court overruled the objections. Witness then stated that defendant Wilcox came to Cherokee county in the year 1850, called on witness, asked him to show him the land in controversy; witness showed him the land and the lines. Wilcox went upon the land about the time above stated, and said that he had a contract or understanding with defendants Scott, that he should take possession of the land for them, and that he, Wilcox, should clear forty acres of the land in controversy, and occupy the land until the Scotts came to the country. Wilcox then entered upon the land, and continued to live thereon to the present time; made improvements, cleared some forty acres; had never cleared any more; had enclosed no more; but held the land for the Scotts, who lived in Alabama, and had never lived on the land; had visited it frequently.

The court charged the jury, "If you believe from the evidence that Strode, or any one for him, complied with the bond for title by paying to Jordan the purchase money, then Jordan could not defeat the title by conveying the land to another. If you find the bond was complied with by Strode, though a deed was not made, and you find that the plaintiffs have the older right, they would be entitled to recover the land, and such damages as they may have sustained by the wrongful acts of the defendants, unless the plaintiffs are barred by the statute of limitations of three years, to be decided from the evidence. Possession under the statute may be by the true owner or his tenant. In either case the possession must be actual, continuous, adverse and exclusive, for the period of three years or longer, next before the filing of the original petition claiming under a regular chain of title from the government to the claimant, and duly recorded. Possession by the tenant must be open and notorious. It must be taken and held in good faith in the name of the owner, and for his benefit. Declarations of the terms made and accompanying the act of possession, are admissible to explain the character of his possession, when made in good faith, to be decided from the evidence. Possession under a deed in which the land is described, extends to and includes the land within the limits of the deed or boundary."

Wallace v. Wilcox.

The following instructions were asked by the plaintiffs and refused by the court:

" 1st. Plaintiffs ask the court to charge the jury, that the provision in the instrument of writing from Jordan to Strode, with regard to the payment of dues to the government, did not make it obligatory on plaintiffs to prove that the dues had been paid to the government, and even if they had not been paid, it would not affect the validity of the instrument so as to defeat the plaintiffs' rights under it. That the instrument is evidence that all was paid by Strode for the land that he would be required to prove that he had paid.

" 2d. That the instrument of writing was a conveyance of the legal and equitable title to the land described, and is sufficient evidence of title to maintain an action of trespass to try title. That the declarations of Wilcox, while upon the land, would be no evidence for the defendants Scott. That the occupation of the land by the defendant Wilcox, cannot avail the defendants Scott, unless the defendant Wilcox held the land in controversy for three years by a written contract of tenancy."

Verdict and judgment for defendants; motion for new trial overruled, and appeal by plaintiffs.

*Donley & Anderson,* for appellants.—It is contended that the instrument of writing made by Jordan to Strode, of date February 4, 1835, is a conveyance of the land; that by virtue of the words used, it operated to pass the title from the grantor to the grantee ; by the terms of the writing, no further act was required to be done by Strode to entitle him to all the right, title and property, which the said Levi Jordan had in and to the land sold and agreed to be conveyed. Strode might, immediately on receiving the instrument, or any time thereafter, have demanded that Jordan make to him a deed in fee simple to the land; in fact, nothing more than a demand was necessary, if any further act was necessary. If the agreement required a more formal instrument, to use the language of the writing, " a deed in fee simple," the preparation and execution of that instrument devolved upon Levi Jordan. (See Walling v. Kennard, 10 T. R., 508.)

Then, as nothing further was to be done by Strode to entitle him to a conveyance of the land, equity regarding that as being done which ought to be done, Strode must be held as having the title to the land. (1 Story's Equity, sec. 64, p. 79.)

Then setting aside mere forms, and looking to the substance of the agreement, as nothing further was required to consummate the contract, the words "bargain and sell" are operative words of conveyance. And as it is not questioned that the title to the land was in Levi Jordan at the time of executing the instrument on the 4th day of February, in the year of our Lord 1835, Strode, by the conveyance, had what it is evident that the parties to the contract intended he should have—a title to the land "in fee simple." "Fee simple is a pure inheritance, clear of any qualification or condition. * * No person is capable of having a greater interest in land." (4 Kent, p. 4.) At the time of this sale, a writing was not necessary to pass the title to real estate. Contracts for the sale of lands were not required, we believe, to be in writing till the act of January 18, 1840. (O. & W. Dig., art. 936.) Whether in writing or verbal, if there was a valuable consideration, and there were words sufficient to show that the grantee was to have the use, this was sufficient. (4 Kent, p. 496.) If, in fact, as is contended in argument by appellees, and was assumed by the court, when charging the jury, that the statement in the writing from Jordan to Strode, "in consideration of other moneys, which is to be paid to the general government," had reference to the money that was due the government for the league of land granted to Levi Jordan; then, we ask, at what time was Strode to pay said other money to the general government? It is not stated by any witness who has testified. That fact is not apparent from any evidence in the case. It cannot be inferred from any fact in evidence in the case, that the time agreed upon by the parties that Strode should pay said "other moneys to the general government" had expired; when Jordan, by his agent Earp, without request from Strode, and without notice to him that the money should be paid, voluntarily paid the money, and by this means prevented Strode from complying with his contract. What is the principle urged here by appellee (if principle it can be called,)

that a party shall contract and agree to sell his property for its fair market value; that at the time of making the contract he shall receive in hand very nearly four-fifths of the entire consideration agreed to be given, and then without so much as demanding the remainder of the consideration agreed upon, and without reminding the party with whom he has dealt that the day of payment has arrived, he permits it to pass, and on the next day by his agent, without any demand having been made upon him, he applies to the officer authorized to receive the money and pays it, and claims that the party who has been so unfortunate as to contract with him, shall forfeit, for his default of one day, the four-fifths of the entire value which had been paid for years before. This, surely, cannot be law. We understand the law and the courts always lean against forfeitures. We do not doubt but that it is possible to make an agreement by which a party may forfeit what he has paid, if he willfully neglects, or more certainly if he refuses to comply with the agreement and consummate the contract. Such is not the case here. (Todd v. Caldwell, 10 Tex. R., 237; Lander v. Rounsaville, 12 Id., 195; Hill v. Stell, 19 Id., 76; Jackson v. Root, 18 Johnson, 60.)

Had the defendants Scott gone upon the land at the time Wilcox did, we are not certain that they would not have been within the saving of the statute. That, however, is not the case here. The question is, can a party, having purchased and placed his deed upon record, avail himself of the statute of limitation by placing on the land an agent or tenant claiming under him, without written authority or permission? We submit that he cannot. We think that the legislature, in enacting the laws, intend that there should be no dispute as to boundaries, or the land occupied or claimed by the party in possession. There can be no question, where the boundaries are defined by a writing, if the entry is under claim of right of property in the land, the possession is co-extensive with the land as described in the deed. This, we take to be holding under title or color of title; it designates the property and defines the extent of the possession. (Angell on Limitation, secs. 400, 401, 402, and cases there referred to.) This case shows clearly the necessity of a writing defining the interest of

the party, and the extent of the possession. It cannot, with certainty, be affirmed from the testimony here that the defendant Wilcox was to have possession of any particular part of the half league of land. The evidence more particularly, as we think, gives him a right as tenant to some 40 acres, but gives it no location. To avail as a defence, the location of the parcel occupied must be shown. (Ang. on Lim., sec. 399.) Had Wilcox claimed under a writing, whether as tenant or as agent, the character of his occupation and the extent of it could at once be seen and known by an inspection of the writing. Again, if the occupation is evidenced by writing, and the writing is established by legal proof, it at once closes a wide door to fraud. If the court shall hold that the possession of the tenant is the possession of the landlord, surely to bring himself within the spirit of the statute, (for it is all outside of the letter,) the party in actual possession must hold under and by virtue of a writing. Here the parties claiming the property adverse to the appellants have never been residents of the State, their home is distant in another State many hundreds of miles. If the statute may be tortured in this way, it opens wide the door for fraud and perjury. It certainly is an easy defence, if a party has been in possession of land to all appearances as an intruder, when sued for the land, if he can find another party who has a deed to the property, however worthless, that he agrees to consider himself a tenant claiming under the party who holds a deed as in this case, upon his own declaration, without any of the usual tests of truth, without oath, without cross-examination, upon his own unsupported statement, he makes good his defence, and, in fact, disaffirms the contract if he refuses to complete the contract. (Browning v. Estes, 3 Tex. R., 462.)

*Bonner & Bonner*, also, for appellants, cited Land Coms. v. Bell, Dallam Dig., 336; 2 Story's Equity, §§ 775, 776; Primm v. Barton, 18 Tex. R., 222; Jones v. Menard, 1 Tex. R., 771.

*A. J. Good* and *T. J. Word*, for appellees.

BELL, J.—We are of opinion that there is no error in the judgment of the court below. Many questions are raised and

elaborately argued by the counsel for the appellants, but the merits of the case really lie within a very narrow compass.

We think the court below did not err in treating the instrument executed by Jordan in favor of Jeremiah Strode, on the 4th day of February, A. D. 1835, as a bond for title, and not an absolute conveyance. The instrument in question is substantially the same as the one which was construed by this court in the case of Secrest v. Jones, 21 Tex., 121. It showed that something remained to be done by Strode, and that a further assurance of title was contemplated by the parties.

But even if the court had erred in the construction of the instrument referred to, this case would necessarily be determined in favor of the appellees, upon the question of limitation. The record shows that the real defendants below, William Scott and Edmund Scott, had been in possession of the land in controversy, by their tenant, William Wilcox, for more than three years next before the institution of this suit, claiming the same under title from the government, and having paid the purchase money.

This court has decided that possession by a tenant will support the plea of the statute of limitations of three years.

We are of opinion that the court below did not err in admitting the declarations of the tenant Wilcox to go to the jury as evidence. The declarations were made when he first took possession of the land, and while he remained in possession. Such declarations are in disparagement of the title of the declarant, and are admissible on that principle, and on the further principle that they qualify the possession of the declarant, though they be not in disparagement of his title, and are admissible as part of the res gestæ.

The court did not err in admitting in evidence the copies of the deeds from Levi and Cynthia Jordan to Duren, and from Duren to Lacey. The affidavit offered to lay the foundation for the introduction of the copies, was a compliance with the statute.

The judgment of the court below is affirmed.

Judgment affirmed.

MOORE, J., did not sit in this case.