## J. D. SANDERSON v. C. M. WELLSFORD.

### Decided February 11, 1909.

**1.—Land Agent—Commissions—Sale—Pleading.**

In an action by a land agent for commissions alleged to be due by his compliance with a contract entitling him to such compensation on his effecting a sale of the land, such pleading was supported by proof showing that the vendor and purchaser, in pursuance of the agent's negotiations, made an executory contract for its sale and purchase, by which the purchaser acquired an equitable title that would support an action for specific performance; such transaction was a sale within the meaning of the contract with the agent, though it was not carried out, being afterwards set aside by agreement of the parties.

**2.—Same—Commissions—When Due.**

Though the commissions of a land agent were not payable under his contract until payment for the land by the purchaser secured by him, they became due and recoverable when the principal, having by such agent's negotiations effected an executory sale of the land, made a new agreement with the purchaser cancelling the trade.

Appeal from the County Court of Bowie County. Tried below before Hon. Sam. H. Smelser.

*Glass, Estes & King,* for appellant.—There is a material variance between plaintiff's cause of action as plead and his cause of action as proven by the evidence offered by him in that he bases his cause of action in his pleading upon a sale; whereas, the evidence shows a contract of purchase only, under the terms of which the sale depended upon certain conditions and provisions being complied with, and that no sale was ever made as alleged by the plaintiff in his petition, and upon which he bases his cause of action for commission. Shiner v. Abbey, 77 Texas, 1; Wisbey v. Boyd, 27 S. W., 590; Thornton v. Stephenson, 31 S. W., 232; Braley v. Barbett, 78 S. W., 965; Clark v. Wilson, 41 Texas Civ. App., 450; Wilson v. Peace, 38 Texas Civ. App., 234; Pryor v. Jolly, 91 Texas, 86; Yarborough v. Creager, 77 S. W., 645; Jones v. Pendleton, 96 N. W., 574; Cosgrove v. Mercantile Co., 74 S. W., 986; Gatling v. Central Spar Verein, 73 N. Y. Suppl., 496; Railway Co. v. Cox, 103 S. W., 1122.

The court erred in refusing to give to the jury the defendant's special charge No. 3. Railway Co. v. McGlamory, 89 Texas, 639;

Consumers Oil Co. v. Gentry, 35 Texas Civ. App., 445; Railway Company v. Hall, 85 S. W., 790; Railway Company v. Kiersey, 86 S. W., 744; Texas Loan & Trust Co. v. Angel, 86 S. W., 1056; Railway Company v. Johnson, 98 Texas, 76; Neville v. Mitchell, 28 Texas Civ. App., 89.

*Hart, Mahaffey & Thomas,* for appellee.—It was not necessary, under his allegations, for appellee to prove more than a contract between appellant and the intending purchaser, binding appellant to sell at a certain price, and binding the purchaser to buy at that price. Appellee was not obliged to show an actual passage of the legal title. Love v. Miller, 21 Am. Rep., 192; Conklin v. Krakauer, 70 Texas, 735; O'Brien v. Gilleland, 79 Texas, 602; Gibson v. Gray, 17 Texas Civ. App., 646; Sullivan v. Hampton, 32 S. W., 235; Cheatham v. Yarbrough, 15 S. W., 1076; Brackenridge v. Claridge, and notes, 43 L. R. A., 593; Lockwood v. Rose, 25 N. E., 710; Francis v. Baker, 47 N. W., 452; Knapp v. Wallace, 41 N. Y., 477.

HODGES, ASSOCIATE JUSTICE.—Appellee sued the appellant in the County Court of Bowie County to recover the sum of $450 alleged to be due as commissions for selling some land in Lafayette County, Arkansas, for the appellant.

Inasmuch as the principal assignments of error attack the variance between the pleadings and the proof, we will copy a portion of the appellee's petition. After stating that he was a land agent engaged in the business of selling land for others, he thus states his cause of action:

"Plaintiff further alleges that heretofore on or about the 1st day of November, 1903, the said defendant engaged and employed this plaintiff to sell for him the following described lands in Lafayette County, State of Arkansas: (Land is here described) and agreed to pay plaintiff for his services a sum equaling five percent of whatever amount the plaintiff should be enabled to sell such lands for to any purchaser thereof which the plaintiff could secure.

"The plaintiff shows that he advertised the said land, carried persons to see the same, and after much work and expenditure of much time and money found a purchaser for said land in the person of Thos. C. Edwards, and that thereafter on the 11th day of December, 1903, the defendant sold the land to Thos. C. Edwards for the sum of Nine Thousand Dollars.

"That plaintiff further shows that he was the efficient and procuring cause of the sale of said land so made by the defendant to Thos. C. Edwards, and that on account of the facts aforesaid the defendant became and is liable to pay to plaintiff the sum of Four Hundred and Fifty Dollars, with six percent interest thereon since the 11th day of December, A. D. 1903, which amount, though often requested, the defendant has failed and refused to pay."

The appellant answered by general demurrer, general denial and special defenses not necessary here to mention.

On a trial before a jury appellee recovered a judgment for the amount sued for.

Assignments Nos. 1, 2 and 3 are based upon the contention that there is a variance between the allegations of the petition and the proof. It was shown that Wellsford was a land agent engaged in the business of selling real estate for others on commission. Sanderson was the owner of certain tracts of land located in Lafayette County, Arkansas, which he desired to dispose of. He employed the appellee to sell the land for him, and agreed to give him a commission of five percent on the purchase price. In pursuance of this agreement the appellee exhibited the land to a man by the name of Edwards, who lived in St. Louis. Edwards, after seeing the land, took an option from the appellant to purchase it at a stipulated price of $3 per acre. Before the time specified in the option expired Edwards concluded to avail himself of the opportunity and purchase the land, agreeing to pay therefor the sum of $9,000, one-fourth in cash and the remainder in notes. Sanderson and Edwards thereupon entered into a written contract, in which it is recited: That whereas on the 12th day of November, 1903, Sanderson gave to Edwards the option and privilege of purchasing the lands situated in Lafayette County (describing them) for the sum of $9,000 (and describing the terms agreed upon), and whereas, Edwards had determined to avail himself of that option and purchase the land, it was agreed by and between them as follows: First, that Sanderson obligates himself that as to all of said lands, except 320 acres, specifically described, he would within sixty days from that date furnish a satisfactory abstract of title thereto and convey the same to Edwards upon the terms set out in the option, one-fourth cash and the balance in two notes for equal payments due in one and two years, with interest. Second, Edwards obligates himself to purchase the land described, upon the terms agreed to, within sixty days from that date, and as a portion of the cash to be paid on the date of the closing up of the purchase by deed Edwards had deposited with Henry Moore, of Texarkana, Arkansas, the sum of $900, the remainder of said cash portion of said purchase money to be paid when said deed was executed, within sixty days, accompanied by a satisfactory abstract of title. Third, a similar obligation to purchase the 320 acres, but Sanderson is given a longer time within which to furnish the abstract of title and to make the conveyance. Fourth, Sanderson gives to Edwards the right to sell any or all of the timber on the lands, at any time after the execution of this contract, provided the proceeds or purchase money of the timber be applied upon the deferred payments that were to be thereafter evidenced by the notes. Fifth, contains an obligation on the part of Sanderson to release in the future his lien against any portion of the land, amounting to 640 acres or more, which Edwards might sell, upon condition that as much as $3 per acre of the land sold be paid upon the notes given. Sixth, Edwards obligates himself within the time stipulated in the agreement for the making of the abstract of title and the conveyances by Sanderson, to complete the purchase by the payment of the cash portion of the purchase money and by the execution of the notes mentioned, upon Sanderson's complying with his obligation to furnish the satisfactory abstract of title and deed or deeds with the usual covenants or warranty; and in case Edwards

should fail and refuse to so complete the purchase provided for, within the time specified, then the $900 deposited should be forfeited. This instrument was signed and acknowledged by both parties, and recorded in Lafayette County, Arkansas, where the land was situated.

The testimony is undisputed that Sanderson never furnished any abstract of title, and never made or tendered to Edwards any deeds to the land; that Edwards was at all times ready and willing to comply with his contract, and to take the land upon the terms agreed to; that Sanderson, in order to be released from the performance of his part of the contract, paid Edwards $100, and the agreement was cancelled.

This instrument was offered in evidence by the appellee to show that a sale of the land had been made; and he relies upon it as proof of the happening of the contingency upon which he was to receive his commission of five percent.

The objection urged under the assignments of error to which we have referred are predicated upon the proposition that this proof shows a different state of facts from that which was pleaded by the appellee.

The question raised by these assignments is, has the appellee shown a right to recover under his pleading? It is practically conceded that he has shown by his evidence, if accepted, a state of facts which would entitle him to a judgment for commissions if it had been differently pleaded. It is not to be denied that the pleadings and the proof upon which the appellee relies harmonize in the following particulars: (1) that the appellant employed Wellsford, the appellee, as a real estate broker, to sell for him the land in question, and agreed to allow him as compensation for his services a commission of five percent of the purchase price at which the land was sold, and (2) that Wellsford did, in pursuance of that contract of employment, procure a purchaser in the person of Thos. C. Edwards, who was willing and able to purchase the land upon the terms offered. It is denied, however, that the substance of the other allegation "that thereafter on or about the 11th day of December, 1903, defendant sold the land to Thos. C. Edwards for the sum of Nine Thousand Dollars," was proven. It is contended that the written agreement relied upon by the appellee for proof of the fact that the land was sold as alleged, and which has been heretofore substantially quoted in stating the facts, is not sufficient. The soundness of that position depends upon what signification should be given the words "sell" and "sold," as used in this connection. If these words should be limited to a reference to transactions where the legal title to the land is conveyed from the seller to the buyer, then the appellant may be correct; but if a broader and a more liberal construction should be given, such as may be intended when the terms are used in common parlance, or when employed in a contract authorizing an agent to sell land for another, where the agent has no power to convey the title and no such conveyance by him is contemplated, we think the allegations and the proof are not inconsistent. Where parol authority only is given a broker to sell land for another in consideration of a stipulated commission, we think it may be said that the land is sold within the meaning of the language used

in such a contract, unless it clearly appears to the contrary, when the broker produces a purchaser willing and able to comply with the terms of sale and an agreement is entered into between the purchaser and the seller which ultimately terminates in an actual transfer of the title, or when the agent has performed the services required of him and the vendor and the purchaser enter into a contract binding upon each and of which either may in the courts compel a specific performance. The word "sold" does not necessarily in all connections mean that a conveyance must be made or that the title must pass. Shainwald v. Cady, 92 Calif., 83, 28 Pac., 101; Eaton v. Richeri, 83 Calif., 185, 23 Pac., 286; Brooks v. Libby, 89 Me., 151, 36 Atl., 66. In the case at bar Sanderson, the principal, and Edwards, the purchaser, were by the broker brought together, and entered into a contract by which Edwards was given an option on the land for a definite period of time. Later Edwards determined to avail himself of the option thus given, and he and Sanderson then entered into a written contract by which Sanderson bound himself to make title within a certain specified time, and Edwards bound himself to purchase according to the terms stated. A part of the purchase price agreed upon to be paid in cash was in fact paid by Edwards to another who was to hold it for Sanderson and deliver it when Sanderson made title as he had agreed to do. By the terms of this contract Edwards was authorized to go upon the land and sell the timber thereon, upon condition that he apply the purchase money which he received for the timber upon the payment of his indebtedness to Sanderson. This, we think, clearly should be construed as giving Edwards authority to take possession of the land. Either party might have maintained an action upon this contract, against the other, for a specific performance. Insofar as Edwards was concerned, it had the effect of vesting in him an equitable interest in the land. It was at least of equal dignity with a bond for title, because Sanderson thereby bound himself unconditionally to make the title. Wallace v. Wilcox, 27 Texas, 60. Treating this written agreement, then, as an executory contract to sell land, it can not be denied that Edwards thereby acquired an equitable interest in the land described. He became endowed with something in reference to the land which he did not have before, aside from a mere personal right of action against Sanderson for the enforcement of the contract. Pomeroy's Equity Jurisprudence, secs. 368, 372, 1261, 1406; Id., vol. 6, sec. 839; Haynie Mer. Co. v. Miller, 41 Texas Civ. App., 79; Majors v. Maxwell, 96 S. W., 731. Had Edwards gone into possession under his contract and made his payments, he could thereafter have relied upon the contract as a muniment in his chain of title. Under the decisions of this State one holding land under a bond for title can maintain an action of trespass to try title against another, and, except as against the vendor, he need not prove payment according to the terms of the bond. Downs v. Porter, 54 Texas, 61; Elliott v. Mitchell, 47 Texas, 450; Wright v. Dunn, 73 Texas, 293; Folwell v. Clifton, 28 S. W., 569. The contract in this case can not be treated as a mere option, because it shows upon its face that an option had been previously given to

Edwards to buy this land upon the terms stated, and that in entering into this contract he was availing himself of that option. In that respect, if in no other, this case is distinguishable from the case of Clark v. Wilson, 41 Texas Civ. App., 450, relied upon by the appellant. In that case it is also shown that the purchaser produced was unable to comply with the terms of sale and for that reason no completed transfer was ever made. In the case at bar the contract between Sanderson and Edwards was not simply permitted by them to go by default, but was cancelled by the parties by the making of another contract between them by which Sanderson, in consideration of the payment to Edwards of $100, secured a release from his obligation to convey the legal title to the land. We do not think the court erred in the manner complained of. Moss v. Wren, 102 Texas, 567.

We deem it unnecessary to notice any of the remaining assignments of error except that based upon the refusal of the court to give the following special charge:

"You are instructed that if you believe from the evidence that the defendant agreed with the plaintiff to pay him a commission of five percent of the purchase price of the land embraced in the contract of December 11, 1903, and that the same should be paid when a sale of the land should be made, and the purchase price, or a part thereof, should be paid, then you will find for the defendant."

In the proposition following this assignment it is claimed that this charge presented one of the vital issues of the case as to the terms of the original contract, as raised by the pleadings and testimony of the appellant, and which issue was not embodied in the general charge of the court. The essence of this charge is an instruction to the jury to find for the appellant if they believed that by the terms of the contract the commissions were not to be paid till the purchase money, or a part thereof, was paid to Sanderson by the purchaser, Edwards. There are but two grounds upon which such a charge could in this case be justified; one, that the issue was raised as to whether the debt from Sanderson to Wellsford for the commissions had matured; and the other, that the evidence tended to show that the contract actually made between the parties was essentially different from the one sued on and testified to by the plaintiff in the case. We have already held that the land must be considered as having been sold, within the meaning of the parties in the making of this contract, by the written agreement between Sanderson and Edwards. There remains, then, as to this special charge only the question as to whether the jury would be authorized to return a verdict for the appellant if they should find that by the terms of the original contract the commissions were not to be paid till the purchase price of the land was collected. We think under the evidence in this case that even if the jury had accepted Sanderson's version and found that this was a stipulation in the contract between Wellsford and Sanderson in regard to commissions to be paid the former, they should have treated it as having reference to the time when the commissions should be paid, and not as a contingency upon which the right of Wellsford to the commissions should, under the facts of this case, be made to depend. However, the undisputed evidence shows that a part of the consideration

to be paid by Edwards was in fact placed in the hands of a third party for Sanderson, and the only reason it did not pass into the actual possession of the latter was because of his own dereliction, and for which neither the appellee nor Edwards could in any manner be held responsible. Under the evidence adduced the mere fact that the consideration had not passed into Sanderson's hands was no defense to this suit, and the charge should not have been given.

The judgment of the County Court is affirmed.

*Affirmed.*