## COCKRELL et al. v. MAXCEY.
### No. 9628.

Court of Civil Appeals of Texas. Austin.
April 9, 1947.

Rehearing Denied April 30, 1947.

Thomas C. Ferguson, of Burnet, for appellants.

Jim C. Langdon, of McCamey, and Jerome J. Byrne and Thurman L. Mulhollan, both of Lampasas, for appellee.

HUGHES, Justice.

Appellants are James Cockrell and Mr. and Mrs. H. E. DuBois, who are the members of the Cockrell Realty Firm, of Lampasas, Texas. Appellee is H. R. Maxcey, who was the owner of the Hotel Maxcey in McCamey, Texas.

Appellants sued to recover a commission of $1,200 allegedly earned under a written listing executed by appellee, authorizing the

Cockrell Realty Firm to show and offer for sale the hotel "completely furnished as is" for the sum of $25,000, and agreeing to pay 5% of the sale price as a commission.

A jury heard the case and two special issues were submitted to it, the first inquiring if James Cockrell procured for appellee purchasers of the hotel property in the persons of Judge J. C. Abney and Judge Sylvester Lewis. This issue was answered "No". The second issue inquiring as to whether these gentlemen were ready, able and willing to purchase the property was unanswered.

Appellants moved for judgment notwithstanding the verdict, on the ground that there was no evidence to support the verdict of the jury and because under the undisputed evidence they had shown themselves entitled to recover the commission sued for. This motion was denied and judgment was rendered that appellants take nothing by their suit. Appellants' motion for a new trial was overruled and this appeal taken.

We agree with appellants' contention that there was no evidence to support the verdict of the jury.

The written listing executed by appellee authorizing the Cockrell Realty Firm to offer the hotel property for sale was procured under the following circumstances: Appellee had purchased a ranch in Lampasas County and Judge Abney had examined the abstract for him. In connection with this purchase a loan of $15,000 was made to appellee by some company for whom the Cockrell Realty Firm was agent, and in the course of the transaction appellant Cockrell became acquainted with appellee. Mr. Cockrell testified that Judge Abney had told him that appellee owned an 85-room hotel which he wanted to sell, and that since the Firm had obtained a loan for him, a listing of the hotel could probably be obtained. Appellee's only testimony as to what he told Judge Abney about the hotel was:

"Q. While you were in Mr. Abney's office, did you mention that you owned a hotel in McCamey, Texas? A. Yes."

Mr. Cockrell, on the day the loan transaction was closed, talked with and obtained the listing of the hotel from appellee.

The day following Mr. Cockrell talked with Judge Abney about the hotel and Judge Abney became interested in purchasing it, but wanted to talk with one or two people and would let him know in a few days. Later Judge Abney told Mr. Cockrell that Judge Sylvester Lewis and he were going to look at the property, which they did. They then informed Mr. Cockrell that they were interested in buying the hotel. Mr. Cockrell advised appellee to this effect and a meeting was arranged, Mr. Cockrell accompanying appellee to Judge Abney's office, where, after some discussion, a contract was executed, dated July 3, 1946, by the terms of which appellee agreed to sell the property to Abney and Lewis for $24,000.

Judge Abney testified that Mr. Cockrell was the first person who talked with him about his buying the property; that he hadn't given a thought to the matter until Mr. Cockrell came to his home and submitted it to him as a proposition.

Apellee testified that Mr. Cockrell told him he had a sale for the hotel and that Judge Abney and Judge Lewis were the purchasers, and that immediately thereafter he entered into the contract of July 3, in the presence of Mr. Cockrell. He also testified that the contract and forfeit check were turned over to Mr. Cockrell for delivery to the Peoples National Bank. Appellee's attorney also mailed to the Cockrell Realty Firm the deed, with instructions to place it in escrow in the bank.

The above facts are not controverted, nor are there any circumstances to be found in the record casting doubt or suspicion threon. They conclusively show that appellant Cockrell did procure purchasers for the hotel property under his listing from appellee.

Since a sale of the hotel property was not actually consummated, we are required to examine and decide other questions raised in order to determine whether appellants are entitled to judgment.

Appellee contends that appellants can in no event recover because the contract between the purchasers and himself was no more than an option on their part to buy or pay liquidated damages, relying princi-

pally upon the case of Moss & Raley v. Wren, 102 Tex. 567, 113 S.W. 739, 120 S.W. 847.

The material part of the original contract provides:

"Said bank is further instructed that in the event said title shall be approved and the said Abney & Lewis shall fail or refuse to pay said $15,000 on or before August 3, 1946, then said bank shall return said deed to the said Maxcey and shall also deliver to him said $2,400 which shall be kept and retained by him as agreed and liquidated damages occasioned by such failure or refusal on the part of the said Abney & Lewis, and thereupon this contract shall be of no further force or effect."

This contract was not carried out within the time prescribed and a new agreement was entered into between the parties on August 7, 1946, which provided that the time for performance was extended to September 2, 1946, before which date appellee was required to deliver to purchasers three specific curative instruments, and: "In the event said curative material can be produced by the said party of the first part within the time and in the manner above provided, said parties of the second part do hereby agree and are hereby bound to accept title to said property and to pay for same as provided in said original agreement, attached hereto and made a part hereof"; and concluding: "Otherwise than is herein stated said original contract shall continue and shall remain in full force and effect."

It is our view that under the express provisions of the contract of August 7, the purchasers were legally bound to buy and pay for the hotel property upon appellee furnishing the specified curative instruments in proper form and within the time prescribed, and that the remedy of specific performance would have been available to appellee to compel compliance. The language of the new contract is repugnant to any option which the purchasers may have had under the original contract, and to such extent is abrogated and superseded the original agreement.

A binding contract of sale having been entered into between appellee and purchasers, appellants' services as brokers had been fully performed. 7 Tex.Jur., p. 467; Seabrook Independent School Dist. v. Brown, Tex.Civ.App., 195 S.W.2d 828, error refused, and authorities there cited.

Under such circumstances a finding that the purchasers are ready, able and willing is unnecessary. Roderick v. Elliott, Austin, Tex.Civ.App., 17 S.W.2d 102.

Independent of our above holding as to the nature of the contract, and should it in fact be a mere option, appellee having been in default of performance, no defense to this suit would be shown.

In Hamburger & Dreyling v. Thomas, 103 Tex. 280, 126 S.W. 561, opinion by Justice Williams, it was held:

"The chief ground of defense is the fact that the writing copied in the opinion of the Court of Civil Appeals, which was executed by the defendants and Baker, did not bind the latter to take the property, but left to him the alternative, even if he should approve the title, either to take it or to forfeit the $1,000 deposited. There would be more force in this if the title had proved satisfactory, and Baker had exercised his right to recede from the trade by forfeiting the money deposited. In such case there would have been neither a willingness to buy nor an enforceable contract to buy, one or the other of which conditions would be essential to the broker's right to compensation. But the latter condition is not essential where the first exists and the sale is defeated by the owner of the property. The question whether or not the plaintiff performed the service called for by the contract is not wholly dependent upon the writing executed between the owners of the property and the proposed purchaser. The fact that the latter really was willing and able to buy, and would have bought, notwithstanding he was at liberty not to do so, had he not been prevented by the defendants' failure to produce proper evidence of title, must be regarded as controlling, and as dispensing with the necessity of a binding contract to purchase, which might otherwise have existed."

Under the undisputed evidence appellee was at fault in at least two particulars. He admittedly removed some of the

furniture, which he contracted to sell, from the hotel and did not restore or offer to restore it. He did offer to make satisfactory adjustment, but none was made or agreed upon. The purchasers were not compelled to adjust this matter, but had the right to insist on strict compliance with the terms of the contract.

Appellee was in default in not delivering the curative instruments to purchasers on or before September 2, 1946. This, too, is without dispute.

The proof is abundant that purchasers were willing to buy.

■ Appellee also contends the contract of sale was invalid because the escrow check, or checks, were not cashed. The checks were delivered to the bank and the failure to convert them into cash was not attributable to appellants. An officer of the bank testified the checks were good, and it is not contended otherwise. It is also shown that appellee knew the checks had not been cashed at the time the second contract was signed. We fail to see any merit in this contention.

■ It is also urged upon us by appellee that there was collusion between appellants and the purchasers and that there was dual representation by the broker. The only evidence in support of these charges is that Mr. DuBois, under the contract of August 7, took charge of the hotel, operated it, and while so doing advertised the hotel for sale for $40,000 in various newspapers, this latter without authority from appellee, but presumably with the consent of the purchasers. At such time appellee was under a binding contract to sell the hotel and the purchasers were vested with equitable title to the property, and no sound reason appears why they should not attempt to sell the property for a profit if they chose, nor why appellant DuBois should not act as broker for them, the services of the Cockrell Realty Firm having at such time been fully performed for appellee. No collusion or dual representation is shown.

The only remaining question to be considered is whether or not appellants were properly licensed under The Real Estate Dealers License Act, Art. 6573a, Vernon's Ann.Civ.St. Three licenses were offered in evidence: License No. 12363, dated January 1, 1946, expiration December 31, 1946, issued to James K. Cockrell, First National Bk. Bldg., Lampasas, Texas; License No. 22157, issued to Henry Everett DuBois, bearing same dates and address; License No. 21860, issued to Cockrell Realty Firm, First National Bk. Bldg., Lampasas, Texas, Mrs. Gladys Cockrell DuBois, bearing same dates. The applications of James Cockrell and H. E. DuBois for license were not offered in evidence. The original and renewal applications of Mrs. DuBois are in evidence, the original, dated June 20, 1945, reading that Mrs. Gladys Cockrell DuBois "hereby makes application for a license as Real Estate Dealer under To be sole owner and operator of Cockrell Realty Firm, registered dealer."

The renewal application, upon which the 1946 license to Mrs. Cockrell and the Cockrell Realty Firm was issued, shows the name of applicant to be "Cockrell Realty Firm, Mrs. Gladys Cockrell DuBois." No information is called for in such renewal application as to any change in the membership of the firm and no such information was given.

The evidence shows that when the original application was made Mrs. DuBois was the sole owner of the Cockrell Realty Firm. In August or September of 1945 her husband and brother, James Cockrell, joined the firm, at which time each procured his license. As to the contents of their applications for license, Mr. DuBois testified, without objection, that they showed membership in the Cockrell Realty Firm, and the same testimony was brought out by counsel for appellee on cross-examination of Mr. DuBois.

It is to be noted that Mr. Cockrell took the listing of appellee's property in the name of the firm of which he was a member, in strict obedience to Sec. 6(a) (10), (e), Art. 6573a, V.A.C.S.

■ Under these facts we are of the opinion that there has been at least substantial compliance with the requirements of The Real Estate Dealers License Act by appellants and that they were entitled to

the benefits of such Act and authorized to operate under the name and as members of the Cockrell Realty Firm.

The trial court should have granted appellants' motion for judgment, notwithstanding the verdict of the jury, and we therefore reverse his judgment and here render judgment for appellants for the sum of $1,200.

Reversed and rendered.