Leonard JONES, Appellant,

v.

Duncan G. ALLEN, Appellee.

No. 12944.

Court of Civil Appeals of Texas.

Galveston.

Oct. 4, 1956.

Rehearing Denied Oct. 25, 1956.

F. Warren Hicks, Houston, for appellant.

Aaron Hessel, Houston, for appellee.

HAMBLEN, Chief Justice.

Appellant instituted this suit in the District Court of Harris County to recover from appellee the sum of $6,175, $675 of which represents a commission paid by appellant to appellee for the sale of real property owned by appellant in Harris County which had been listed with appellee for sale, and $5,500 of which represents an undisclosed profit alleged to have been made by appellee in the sale of such property. The essential facts are in large measure undisputed and may be summarized as follows:

Appellee was at all material times a licensed real estate broker. In January of 1948 appellant listed property which he owned located on the Humble road in Harris County with appellee for sale, agreeing to pay the customary 5% commission in the event a sale should be effected. On February 13, 1948, appellee procured a purchaser for such property by the name of W. V. Ratcliff and an earnest money contract was entered into between appellant and such purchaser. This contract recited a consideration of $13,500 of which $3,500 was to be paid in cash and the balance was to be represented by a note payable over a period of ten years in monthly installments of $106.07 including interest at 5% per annum. The contract further recited the receipt by appellee, as agent, of the sum of $500 as earnest money. There is evidence that appellee represented to appellant that the sale price was a good price for the property. There is evidence that the provisions relative to the deferred payments were incorporated in the contract at the request of appellant.

On February 16, 1948, C. H. Jones, who was shown to be an independent real estate broker in the City of Houston, appeared at the office of appellee and represented that he had a purchaser for the property above described for the sum of $19,000 cash. In connection with this representation C. H. Jones tendered to appellee an earnest money contract already executed by Henry Kaplan and D. E. McAughan, wherein they agreed to purchase the property at that price and wherein is recited the receipt of $1,000 earnest money.

On the same date of February 16, 1948, L. D. Hubbard, an associate in the brokerage business with appellee, secured from W. V. Ratcliff an agreement in writing to sell the property which he was under contract to buy from appellant for the sum of $15,000 cash. At the same time and on the same date appellee procured from appellant an agreement to accept the entire $13,500 for which he had contracted to sell his property in cash rather than partly in cash and partly in the form of a note, as originally agreed upon. Appellee did not disclose to appellant that a sale of the property had been arranged at a price of $19,000 or that Ratcliff, the proposed purchaser from appellant, had agreed to sell the property for $15,000. This information was deliberately concealed by appellee.

On February 26, 1948, appellant executed a deed transferring legal title to the Hum-

ble road property in accordance with the terms of his contract with Ratcliff, except that, as had been subsequently agreed, the entire $13,500 was paid in cash. This transaction took place in the office of a title guaranty company in Houston. The deed executed by appellant purports to convey legal title to G. W. Archer, trustee, a representative of the title guaranty company. Out of the consideration of $13,500 there was deducted the sum of $675 which appellee received as his commission and a further sum of $90.75 representing the fee charged by the title company for the issuance of a policy of title insurance.

Immediately after the last described transaction, on the same date and without the knowledge of appellant, G. W. Archer, trustee, executed a deed conveying the property to Henry Kaplan and D. E. Mc-Aughan. Ratcliff did not appear in the transaction but did receive $1,500, representing the difference between the amount for which he had agreed to purchase the property from appellant and the amount for which he had agreed to sell to Hubbard. Appellee received the difference between $15,000 and $19,000 less the title company fee for issuance of its policy to Kaplan and McAughan. The fee of $13.75 charged for this second policy represented the difference between the fee of $90.75 charged appellant for the $13,500 policy and that of $104.50 which would normally be charged for the issuance of a $19,000 policy.

Appellant filed this suit on January 7, 1953, alleging that he had learned the true facts as above related within six months next prior to filing the suit. He alleged breach of trust on the part of appellee premised upon the proposition that appellee knew of the prospective sale of appellant's property for $19,000 at the time he induced appellant to sell for $13,500. The petition alleged that Ratcliff was not a good faith purchaser but was in fact a dummy employed by appellee in order to accomplish his purpose of defrauding appellant. Ap-

pellee filed a plea of the four year statute of limitations and a general denial.

Trial was before the court and a jury. At the conclusion of the evidence special issues were submitted to the jury, in response to which the jury made findings which appellant paraphrases as follows:

"(1) That at the time Leonard Jones executed the deed conveying the property to G. W. Archer, Trustee, he did not know that Henry Kaplan had entered into a contract to purchase the property for $19,-000.00 cash;

"(2) That Leonard Jones did not learn of this fact until March 15th, 1951;

"(3) That Leonard Jones signed the earnest money contract with W. V. Ratcliff on Friday, February 13th, 1948;

"(4) That on Monday A.M. February 16, 1948, C. H. Jones, the real estate broker, advised Duncan G. Allen's office he had a purchaser for the property who was willing to pay $19,000.00 cash;

"(5) That between 12 noon and 2 P.M., Monday, Feb. 16, 1948, C. H. Jones delivered the contract signed by Kaplan as purchaser, and later signed by L. D. Hubbard as Seller, wherein Kaplan agreed to pay $19,000.00 cash for said property;

"(6) That the contract between Ratcliff as Seller, and Hubbard, as Purchaser, was signed by Ratcliff between 10 P.M. and 11 P.M. Monday, Feb. 16th, 1948;

"(7) That Ratcliff was acting as a good faith purchaser in entering into the contract for the purchase of the property from Leonard Jones."

Upon such verdict the court entered judgment that appellant take nothing.

This judgment is attacked by appellant in ten formal points of error, which need not be separately stated. Points 1 to 8, inclusive, have been grouped by appellant for argument. They are directed to the prop-

osition that under the undisputed facts of this case, together with the findings of the jury relative to the facts which were in dispute, appellant is, as a matter of law, entitled to recover from appellee the sum of $6,175, representing the commission of $675 paid by appellant to appellee and the undisclosed profit of $5,500 allegedly made by appellee as a result of the sale of the property to Kaplan and McAughan for $19,000. Points 9 and 10 present the same basic proposition, amended only to the extent of deducting from the amount which appellant contends he should recover under points 1 to 8, inclusive, the sum of $1,500 shown to have been paid to Ratcliff. It should be noted that appellant does not in any manner attack the verdict of the jury from the standpoint of the evidentiary support therefor, or lack thereof, in the record. He filed no motion for judgment non obstante veredicto, but on the other hand moved for judgment on the verdict. In his motion for a new trial he makes the same contentions that he makes before this Court, namely, that the trial court misapplied the law to the facts as found by the jury and the undisputed facts in the record. His prayer is for a reversal and rendition of judgment in his favor. For reasons which we will state, we are of the opinion that appellant's contentions are without merit, that his points of error presenting them must be overruled, and that the judgment of the trial court must be affirmed.

This cause has been most ably briefed on behalf of both litigants. Appellant cites numerous authorities which he contends support his proposition. The underlying philosophy of his argument, and of the authorities which he cites, is reflected in the following quotation from 2 Tex.Jur., paragraph 181, page 592:

"§ 181. Duty of Agent in General—Adverse Interest.— * * *

"In general it may be said in this connection that the relation of principal and agent is fiduciary, requiring loyalty and good faith, the strictest integrity, and the fairest dealing on the part of the agent towards his principal. Consequently, there is imposed upon the agent a duty of imparting to his principal every material fact relating to agency transactions that he is or becomes aware of in the course of the agency. Good faith, honesty and fairness should always prevail in any transaction in which one is acting for another, and there should be no concealment of any matter that would probably influence the actions of the agent to the prejudice of his principal."

The cited text, as well as numerous supporting authorities, affirm the proposition that a breach of the duty which the law imposes on an agent as above set forth entitles the principal to the remedy which appellant here seeks.

Appellee does not question appellant's proposition, as reflected by the foregoing quotation, but says that it is not applicable to the facts in this case. His answering points, with which we are compelled to agree, are to the effect that the duty of full disclosure, etc., which the law imposes upon agents, and upon the breach of which appellant relies, are imposed only during the course of the agency relationship. He further answers, and we further agree, that the findings of the jury, coupled with the undisputed facts in this record, negative the breach of any duty on the part of appellee at a time when he owed any duty to appellant, or, in other words, during the course of the agency relationship.

The record is not clear as to whether the brokerage contract between appellant and appellee was or was not evidenced by writing. It is, however, undisputed that a contract was entered into and that its sole purpose was to effect a sale of appellant's property. No contention is made that the relationship was created for any other purpose. Under the law such a relationship terminates upon the accomplishment of the purpose for which it was created. In 12 C.J.S., Brokers, § 16, p. 43,

it is stated: "Where * * * the duration of the agency is not fixed by the terms of the contract of employment, it continues * * * until the accomplishment of the purpose for which the agency was given". We do not construe appellant's argument to be opposed to this proposition. We further interpret appellant's argument to concede, and we would in any event hold, that once the agency is terminated the agent owes no further duties to the principal relative to the subject matter of the agency, but thereafter has the same right as any other person to deal in the property and may purchase it if he so desires. 2 Amer. Jur., page 208, paragraph 258.

■ The opposing contentions of the litigants and, as we see it, the only real dispute between them revolves around the question of when the relationship of principal and agent terminated. Appellant contends that it endured until the actual transfer of the legal title out of appellant, which occurred on February 26, 1943. Appellee says that it terminated on February 13, 1948, when appellant executed the earnest money contract and became legally obligated to convey the property to Ratcliff for $13,500. Under the authorities, we hold that the appellee is correct in this determinative issue of this litigation.

Sanderson v. Wellsford, 53 Tex.Civ.App. 637, 116 S.W. 382, 384, 385, was a suit by a broker to recover a commission for the sale of land, claimed to be due under a contract between the broker and the land owner. The evidence disclosed that the broker produced a purchaser who entered into a written contract to purchase the land on terms acceptable to the seller. The sale was never in fact consummated because the seller and purchaser mutually agreed to cancel their contract. In upholding the agent's right to his commission, the court used the following language:

"* * * we think it may be said that the land is sold within the meaning of the language used in such a contract, unless it clearly appears to the contrary, when the broker produces a purchaser willing and able to comply with the terms of sale and an agreement is entered into between the purchaser and the seller which ultimately terminates in an actual transfer of the title, or when the agent has performed the services required of him and the vendor and the purchaser enter into a contract binding upon each and of which either may in the courts compel a specific performance. The word 'sold' does not necessarily in all connections mean that a conveyance must be made or that the title must pass. Shainwald v. Cady, 92 Cal. 83, 28 P. 101; Eaton v. Richeri, 83 Cal. 185, 23 P. 286; Brooks v. Libby, 89 Me. 151, 36 A. 66."

Cockrell v. Maxcey, Tex.Civ.App., 202 S.W.2d 293, 296, was also a suit by a broker to recover a commission. Among the defenses alleged by the principal was one asserting collusion between the broker and the purchaser. In ruling on this defense, the court said:

"It is also urged upon us by appellee that there was collusion between appellants and the purchasers and that there was dual representation by the broker. The only evidence in support of these charges is that Mr. DuBois, under the contract of August 7, took charge of the hotel, operated it, and while so doing advertised the hotel for sale for $40,000 in various newspapers, this latter without authority from appellee, but presumably with the consent of the purchasers. At such time appellee was under a binding contract to sell the hotel and the purchasers were vested with equitable title to the property, and no sound reason appears why they should not attempt to sell the property for a profit if they chose, nor why appellant DuBois should not act as broker for them, the services of the Cockrell Realty Firm having at such time been fully performed for appellee."

We think it must be held that the relationship of principal and agent which existed between appellant and appellee terminated when appellant, on February 13, 1948, executed a binding contract to sell

his land to Ratcliff for $13,500. The jury, in response to Special Issue No. 7, found that Ratcliff was acting as a good faith purchaser in entering into the contract for the purchase of the property. The contract provided expressly that Ratcliff could enforce specific performance. Under such circumstances, appellant had effectively "sold" his property. In Seabrook Independent School District v. Brown, Tex. Civ.App., 195 S.W.2d 828, 830, this Court used the following language:

"It has been uniformly held by the decisions of the courts of this state and supported by the weight of authority from other jurisdictions, that the word 'sold' does not necessarily in all connections mean that a conveyance must be made or that the title must pass. Sanderson v. Wellsford, 53 Tex.Civ.App. 637, 116 S.W. 382; Shainwald v. Cady, 92 Cal. 83, 28 P. 101; Eaton v. Richeri, 83 Cal. 185, 23 P. 286; Brooks v. Libby, 89 Me. 151, 36 A. 66. And it is held that 'in common parlance, the word "sold" does not necessarily include the idea that the necessary writing has been executed to transfer the legal title, but rather that the terms and conditions of the sale have been agreed upon.' Williams v. Ketcham, 37 Ind.App. 506, 77 N.E. 285, 289."

Appellee, having accomplished the purpose for which the agency was created, the relationship thereupon terminated and he thereafter had the same right as any other person to deal in the property. 2 Amer.Jur., page 208, paragraph 258, hereinabove cited.

Tacit recognition by appellant of the stated legal propositions appears to us to be disclosed by an examination of his pleadings in this cause. He alleged knowledge of the prospective sale for $19,000 by appellee at and before the execution of the contract to sell to Ratcliff. He alleged that Ratcliff was not a bona fide purchaser but was a dummy employed by appellee in order to further his alleged plan of defrauding appellant. By findings not here attacked, the jury held against him on both

allegations. The theory upon which he now seeks to reverse the judgment of the trial court is not supportable under the authorities.

Appellant cites Hahl v. Kellogg, 42 Tex. Civ.App. 636, 94 S.W. 389, as a case supporting his position. Our examination of that case discloses a false representation knowingly made by the agent and relied on by the principal at the time of executing the contract of sale. Analogous facts control the decision of Security State Bank of Pearsall v. Burton, Tex.Civ.App., 10 S.W. 2d 201. Kinzbach Tool Co. v. Corbett-Wallace Corp., 138 Tex. 565, 160 S.W.2d 509, involves a general, continuing agency rather than one created for a particular purpose. In Burleson v. Earnest, Tex.Civ. App., 153 S.W.2d 869, the facts reveal that no earnest money contract was involved. The seller executed deeds which he delivered by mail to a bank with instructions to deliver the same to the purchasers when they paid the cash consideration and executed notes for the balance of the purchase price and to thereupon pay the agent a commission. When these notes were not paid, the seller inquired of the agent concerning the default and was informed that the purchasers had been unable to procure the money with which to consummate their purchase, and that he, the agent, had advanced the money and had taken title to the property by deeds from the original purchasers. It was shown that the conveyance to the agent was made simultaneously with the delivery of the deeds by the bank to the original purchasers. The court held that the agent could not become a purchaser from his principal during the course of such relationship without full disclosure of the facts and consent thereto by the principal.

To undertake to distinguish all of the numerous cases cited by appellant would unduly extend this opinion. We have found none wherein the relief which appellant seeks has been granted save where the agent breached some duty legally imposed

to his principal during the existence of the relationship.

Two circumstances require individual mention. In order to consummate the sale of this property to Kaplan and McAughan, it was necessary that appellant accept cash for his property rather than the note originally provided for. Appellee represented to appellant that Ratcliff wanted to pay cash; again represented that $13,500 was a good price for the land, and urged appellant to accept cash in order to assure the closing of the sale. Appellant consented. He now argues most forcefully that even assuming that the agency had terminated with the execution of the original earnest money contract, this action on the part of the appellee re-established the relationship, and appellee was under a duty to disclose all facts in his possession to his principal. The problem is not easily resolved. The representations were manifestly false. The conclusion is inescapable that they were deliberately made and were relied upon by appellant. The facts are unpalatable, regardless of their legal implications. However, we feel that the following conclusions are inescapable. When appellant executed the original earnest money contract, the agency relationship terminated. Appellant was legally obligated to sell his property according to the terms of that contract. Appellee was thereafter free to deal in the property himself. This condition prevailed at the time the representations complained of were made. Appellee was under no legal duty to appellant. If appellant was defrauded, the damages, if any, which flow therefrom are measured by the loss which he suffered as a result of receiving cash rather than the deferred payment note.

Finally should be mentioned the fact that in the original contract of sale which was executed in duplicate there is a discrepancy, in that in the copy which appellant signed it is recited that $500 had been deposited as earnest money, whereas, in the copy which Ratcliff signed it is recited that $100 had been deposited. The evidence is not clear as to how this discrepancy came about, but it is undisputed that only $100 was in fact deposited by Ratcliff. On this appeal, appellant contends that because of lack of mutuality, he was not bound by the terms of the contract and, therefore, the agency relationship had not terminated. We think this position is untenable for two reasons:

In the first place, under the jury verdict, the discrepancy as between appellant and Ratcliff was the result of mutual mistake. While the contract remained executory, that mistake could support an action to rescind the contract. But in this case the contract was ultimately executed and performed on the terms agreed to by appellant. No harm resulted to appellant, or in any event it is damnum absque injuria.

But of more conclusive effect, in so far as this appeal is concerned, is the fact that there is no pleading in the case upon which appellant could be afforded any relief under the now advanced theory of lack of mutuality. As a matter of fact, the discrepancy appears to have been first discovered by appellant during the trial of this case, and therefore could not have been incorporated in his trial pleadings. The record does not reflect that when the discrepancy was disclosed, any amendment to the trial pleadings was offered or sought. Therefore, even if we are in error as to the effect of this discrepancy from the standpoint of substantive law, appellant is not, under Rule 301, Texas Rules of Civil Procedure, in any position to complain of the judgment on this ground.

Judgment affirmed.

CODY, J., not sitting.