GASTON & THOMAS v. W. B. DASHIELL.

(Case No. 959.)

1. FRAUD.—A surviving husband acting as executor of his deceased wife's will, under power to mortgage, sell and dispose of her estate for the benefit of her children, conveyed real estate thus inherited by the children for $20,000, making warranty deed, and two days afterwards received from the vendee a deed reconveying the property to the executor by quit-claim deed for $20,000. No consideration passed for either deed; they were made to enable the executor to incumber the land for his individual use; and both were acknowledged and filed for record on the day of their execution. These deeds were made just after the executor, who desired to borrow money from a third party, had been told that the loan could be obtained on real estate security. Five days after the reconveyance, the third party loaned money to the executor, receiving as security for the loan a mortgage on the land with a power of sale, under which the land was sold and the mortgagee became the purchaser. In a suit involving title between the mortgagee, the executor, and the heirs of the wife, represented by a special guardian, claiming title in them, and charging fraud, *held*,

(1) When evidence tending to charge a party with notice consists in part of written instruments of record in his claim of title, and in part of admitted or unquestioned facts, the question of notice becomes one of law.

(2) As matter of law, the mortgagee was chargeable with notice of the fraud perpetrated on the heirs.

2. CHARGE OF COURT.—Though a charge may be upon the weight of evidence, yet if from the whole case it is clear that no other verdict could have been rendered, or would have been permitted as the basis of a judgment, the judgment will not for that cause be reversed.

APPEAL from Kaufman. Tried below before the Hon. Green J. Clark.

Gaston & Thomas brought trespass to try title to the land in controversy against W. B. Dashiell, who pleaded "not guilty."

Nester Morrow became the guardian *ad litem* of Alfred H. and Ann R. Dashiell, minors, and as such intervened in the suit.

In the petition of intervention it was claimed that the

mother of the minors had been the owner of the property in controversy; that by her last will she had devised it to them; that by the will their mother had made their father, W. B. Dashiell, the defendant, executor, with power at his discretion to sell for their benefit; that in fraud of the rights of the minors, the said executor had conveyed without consideration to J. A. Bennett; that Bennett without consideration had conveyed to W. B. Dashiell, individually; that W. B. Dashiell had, for his own benefit, borrowed money from the appellants, and conveyed in trust to them; that they, appellants, had notice of the vices in the antecedent conveyances; that they had foreclosed the trust deed, and at the sale became the purchasers through one F. H. Davenport; charging fraud, collusion and notice throughout, and praying for a cancellation of all the conveyances, for damages and for the removal of the executor.

By a supplemental petition appellants pleaded the general issue and "not guilty" to the petition of intervention.

On the 10th day of April, 1876, the executor, by a deed reciting a consideration of $20,000, and purporting to be made by virtue of and for the purposes mentioned in the will, conveyed the land in controversy to J. A. Bennett; this said deed was, on the same day, acknowledged in Dallas, and was recorded in Kaufman county on April 12, 1876. The purpose of the executor in making the deed was to get the title in a shape to incumber it, and it was made without consideration.

On the 12th day of April, 1876, J. A. Bennett, by a deed reciting a cash consideration of $20,000, conveyed the land in controversy to W. B. Dashiell, warranting only against those claiming under him. It was proved that no consideration was in fact paid. That the deed was, on the day of its date, proven for record and recorded in Kaufman county.

On the 17th day of April, 1876, W. B. Dashiell borrowed from appellants $3,500, and secured the same by a mort-

gage (with power of sale) upon the land in controversy. The interest was paid upon the loan up to January, 1878.

On January 27, 1879, the appellants sold under the power contained in the mortgage, and through F. H. Davenport became the purchasers. On the same day appellants, as trustees, conveyed to F. H. Davenport by a deed recorded in Kaufman county February 1, 1879; Davenport, by special warranty deed recorded in Kaufman county February 1, 1879, reconveyed to the appellants.

Verdict and judgment for appellants against W. B. Dashiell; for the intervenors against appellants for the land and for damages, and a decree cancelling the conveyances as prayed in the petition of intervention; a verdict that W. B. Dashiell had violated his trust as executor, but no judgment or further act of the court upon that issue.

*Eblen & Robertson,* for appellants.

I. Registration notice is only of the existence and contents of the instrument recorded. Pasch. Dig., arts. 4988, 4994, 4983; McLouth *v.* Hurt, 51 Tex., 120; Cameron *v.* Romely, 3 Tex. L. J., 663.

II. The deeds from the executor to Bennett, and from Bennett to Dashiell, would be valid if their recitals, of which the appellants had constructive notice, had been true. The will of C. A. Dashiell gave the executor power to sell for certain purposes. The deed from the executor to Bennett recited a sale for those purposes for an adequate consideration. The deed from Bennett to Dashiell recites a subsequent sale for an adequate consideration. Stephens *v.* Beall, 22 Wall., 339; Cook *v.* Berlin Mill Co., "The Reporter," vol. 6, No. 6, p. 188; Staples *v.* Staples, 24 Gratt., 235; Dervoise *v.* Sanford, 1 Hoff. Ch., 192; Perry on Trusts, sec. 602*w;* Johnson *v.* Richardson, 3 Tex. L. J., 515.

III. If the court believed that the deed from Bennett

to Dashiell, considering its date, consideration and position upon the record, was sufficient evidence of fraud in the deed from the executor to Bennett, and based its charge upon this opinion, then the charge was erroneous as a charge upon the weight of evidence and based upon a mistake in the estimate of that evidence.    McLouth v. Hurt, 51 Tex., 120; Wade on Notice, secs. 13, 40; Wilson v. Wall, 6 Wall., 91; Perry on Trusts, vol. 2, sec. 602w.

IV.  The deed from the executor to Bennett, and that from Bennett to Dashiell, bearing different dates and importing separate transactions, cannot be construed together as one instrument, as a matter of law.  Dunlap v. Wright, 11 Tex., 602; Wallis v. Beauchamp, 15 Tex., 305; Perry on Trusts, vol. 2, sec. 602w.

V.  The legal effect of said two deeds is not a purchase by Dashiell from himself.   By special charge No. 11, requested by appellants, the court was asked to charge the jury that appellants had constructive notice only of the contents and legal effect of said deeds, and that if they bore different dates they could not be construed together as one transaction as against appellants, unless they had notice of the fraud or want of consideration in said deeds; which the court refused to give.   Dunlap v. Wright, 11 Tex., 602; Wallis v. Beauchamp, 15 Tex., 305; Perry on Trusts, vol. 2, sec. 602w.

VI.  Purchasers are only charged by construction with notice of the facts actually exhibited by the record, and not with such as might have been ascertained by such inquiries as an examination of the records might have induced a prudent man to make.   The appellants had no actual knowledge of the contents of the deed from the executor to Bennett—none of the deed from Bennett to Dashiell; and knew nothing of the fraud or want of consideration in said deeds.   Neither of said deeds on its face showed fraud or want of consideration.   Both were on record at the date of appellants' purchase.   The ap-

pellants in the third subdivision of special charge No. 1 requested the court to charge the jury that said two deeds on their faces were valid, and that no constructive notice of them would affect appellants with notice of the fraud or want of consideration in them; which was refused by the court. Taylor *v.* Harrison, 47 Tex., 457; McLouth *v.* Hurt, 51 Tex., 120; Chalk *v.* Watson, 11 Tex., 93; Wilson *v.* Wall, 6 Wall., 91; Perry on Trusts, vol. 2, sec. 602*w.*

VII. If the appellants had notice of the trust incumbering the property, still, as the executor had by the will of C. A. Dashiell the power to mortgage, and the appellants had no notice of the executor's intent to misapply the money borrowed, they would be entitled to recover. Danish *v.* Disbrow, 51 Tex., 240; Baldridge *v.* Scott, 48 Tex., 138; Jordan *v.* Imthurn, 51 Tex., 287; Perry on Trusts, vol. 2, sec. 768; Jones on Mortgages, vol. 1, sec. 129.

*Manion & Adams* and *Ferris & Rainey*, for appellees.

I. The deeds from Dashiell, as executor, to Bennett, and from Bennett back to Dashiell, and the record thereof, show upon their face a sale by the executor, through Bennett, indirectly to himself, without any consideration having been in fact paid; and that the same was invalid as against the claim of the intervenor's wards. Pasch. Dig., vol. 2, art. 5640; 4 Kent, 438 (late edition, p. 475); Hamblin *v.* Yarneck, 31 Tex., 94; Merriman *v.* Russell, 39 Tex., 278; Davine *v.* Fanning, 2 Johns. Ch., 252; Baldridge *v.* Scott, 48 Tex., 191; Perry on Trusts, secs. 224, 830, 602*k;* Redfield on Wills, vol. 3, p. 534, and authorities cited.

II. The charge of the court was upon the construction of certain instruments of writing introduced in evidence, and that the proper registry thereof would affect the parties with constructive notice, and was not a charge

upon the weight of evidence.   Hamblin *v.* Yarneck, 31 Tex., 94; Briscoe *v.* Bronaugh, 1 Tex., 332; 38 Tex., 532; Perry on Trusts, sec. 223.

III.  Constructive notice is a legal presumption of notice arising not only from the records, but also from facts recited in the chain of title under which a party may claim title; also from the nature and character of the transaction itself, and also from all the facts and circumstances of the case from which the courts will presume that a purchaser had notice of the equities attached to an estate. Perry on Trusts, sec. 223; 1 Tex., 332.

IV.  The power to sell granted by the will to the executor, W. B. Dashiell, could not be delegated by him to a third person, and the sale by Gaston & Thomas, under the mortgage, was without the authority of law, and null and void.   4 Johns. Ch., 369; Redfield on Wills, vol. 3, pp. 237 and 549, subd. 4; Perry on Trusts, sec. 779; Story on Agency, p. 15, sec. 13.

V.  The act of W. B. Dashiell, as executor, in conveying said real estate to said Bennett, and the act of said Bennett in conveying the same back to said Dashiell individually, no consideration in either case having been in fact paid, did not divest the said children of their title to the same; but the trust re-attached, and said Dashiell held the same as before, in trust for the purposes named in the will.   Merriman *v.* Russell *et al.*, 39 Tex., 278; Perry on Trusts, secs. 222, 830; Redfield on Wills, vol. 3, p. 534; 4 Kent, p. 438; Perry on Trusts, sec. 224.

VI.  The appellants, Gaston & Thomas, were affected with constructive notice of the trust, and of the violation thereof by the executor, W. B. Dashiell, in procuring a conveyance to himself individually of the said premises (being the principal estate belonging to said minors), in order to mortgage the same for a loan of money for his own use, and are not authorized in law or equity to recover the same as innocent purchasers.   Mullins *v.* Wim-

berly, 50 Tex., 457; Perry on Trusts, sec. 223; 1 Tex., 332; Wade on Notice, pp. 20, 21, 22, secs. 37–41.

VII. The sale from Gaston & Thomas to Davenport, under which appellants claim title, was without authority and void, the said Dashiell having no authority to delegate his power to sell to another, and not having in fact sold the property himself to any one for a valuable consideration. 4 Johns. Ch., 369; Redfield on Wills, vol. 3, p. 237; Perry on Trusts, sec. 779; Story on Agency, p. 15, sec. 13.

GOULD, CHIEF JUSTICE.— Gaston & Thomas brought their action of trespass to try title against W. B. Dashiell, deraigning their title through a sale, made by virtue of a mortgage with power of sale, executed to them by Dashiell April 17, 1876, to secure the sum of $3,500, that day borrowed by him of Gaston & Thomas.

The land sued for had been the separate property of Mrs. C. A. Dashiell, who, by her will duly probated and recorded in Kaufman county in 1867, devised all her estate to her children, making her husband W. B. Dashiell executor, with full power to manage, sell and dispose of the estate for the benefit of the children.

On the 10th day of April, 1876, the said executor, by a deed reciting a consideration of $20,000, and purporting to be made by virtue of and for the purposes mentioned in the will, conveyed the land in controversy to J. A. Bennett; the deed was, on the same day, acknowledged in Dallas, and was recorded in Kaufman county on April 12, 1876.

On the 12th day of April, 1876, J. A. Bennett, by a deed reciting a cash consideration of $20,000, conveyed the land in controversy to W. B. Dashiell, warranting only against those claiming under him. Said deed was, on the day of its date, proven for record and recorded in Kaufman county.

These facts were set up in a plea of intervention filed by Nestor Morrow, as special guardian for the surviving children of C. A. Dashiell, alleging also, and on the trial it was so proven, that the conveyances from Dashiell to Bennett, and from Bennett to Dashiell, were without consideration, and made for the purpose of enabling Dashiell to incumber the land for his individual use. The plea charged Gaston & Thomas with notice, actual and constructive, that the mortgage was in fraud of their rights.

Gaston & Thomas testified that in April, 1876, Dashiell applied to them at Dallas, where they carried on business, to borrow money, and that they agreed to lend him $3,500 upon his giving "realty as security" and furnishing the proper evidences of title; that a few days afterwards, on April 17th, Dashiell delivered them the mortgage, with the certificate of the county clerk of Kaufman county that the records showed perfect title free of incumbrance in Dashiell, and a certificate of a law firm in Kaufman to the same effect, and that the title was, so far as they knew otherwise, free from incumbrance of any character whatever. Gaston & Thomas testify that they relied solely on these certificates, and had no knowledge of any defect of title, or of what the chain of title was.

It is unnecessary to detail the evidence further, or to give more than a part of the charge. The jury were instructed that whilst the executor had no authority to sell except for the benefit of the children, one who purchased from him in good faith without notice of his fraud, or one who in like manner purchased from Bennett whilst the title was in him, would take a title superior to that of the intervenors. The charge proceeds: "The executor could not become the purchaser of the land through Dr. Bennett or any one else; and if he did so, he would hold it in trust as the executor of his wife's will, and could sell it alone for the benefit of the children. This is a rule of law of which the plaintiffs and every one else are bound

to take notice at their peril; and if the jury believe from the evidence that Dr. Dashiell, as the executor of his wife's will, with the intent to convert the property to his own use, conveyed the land in controversy to Dr. Bennett without a valuable consideration, and made him a deed as such executor, and that immediately thereafter Dr. Bennett reconveyed the same land to the executor in his own name, then Mr. Dashiell would not thereby become the owner of the land, and he would not have power to sell it any more than he would before the execution of such conveyances; and if the jury believe from the evidence that the will of Mrs. Dashiell was properly probated and recorded in Kaufman county, and that the land in controversy is part of the estate, and that the executor, in his capacity as such executor, conveys the land to Dr. Bennett, and immediately thereafter Dr. Bennett reconveyed the same land to Dr. Dashiell in his own name, and that these deeds were both duly recorded in Kaufman county at the time the plaintiffs took their deed of trust, then they would be in law and in equity charged with constructive notice that the executor had violated his trust and that he still held the land as such executor, for the uses and purposes mentioned in the will; and however innocent in fact they may have been, they would not in law be innocent purchasers. The records would be of themselves notice to the plaintiffs that they were taking a deed of trust upon property which rightfully belonged to the legatees in the will, and in that event the jury should find for the intervenors."

The verdict and judgment was in favor of the intervenors, and the first question presented is the correctness of this charge.

It is to be noted that Gaston & Thomas deraign their title through the will of Mrs. Dashiell, the deed of the executor to Bennett, and the quit-claim deed of Bennett back to Dashiell, and that they are conclusively presumed

to have inspected these instruments. Although they may in fact have had no knowledge of the contents of the will and deeds, they are charged with notice just as if they had actually inspected them. Willis *v.* Gay, 48 Tex., 470; Robertson *v.* Guerin, 50 Tex., 323; Peters *v.* Clemens, 46 Tex., 123; Cordova *v.* Hood, 17 Wall., 1; Thornton *v.* Knox, 6 B. Mon., 76; Woodward *v.* Woodward, 7 B. Mon., 116; 1 Sugden on Vendors, par. 30, and p. 774, par. 45; White & Tudor's Lead. Cas. in Eq., 4th Am. ed., vol. 2, pt. 1 [53–4], 123–4; Wade on Notice, secs. 308–10.

As the plaintiffs are thus chargeable with knowledge of the contents of these instruments, it is not important to inquire as to the extent of the notice growing out of registration.

It is further to be noted that the charge is to be tested, not as an abstract proposition, but with reference to the facts in evidence. An examination of the authorities fails to satisfy us that there is a rule of law making a reconveyance by a purchaser shortly after, or on the same day of the sale and conveyance by the trustee to him, on its face evidence, as against one who subsequently buys, of an indirect purchase by the trustee of himself. Appellee cites from 1 Leading Cases in Equity (part 1, p. 255), where, in discussing the disability of a trustee or executor to buy of himself, and stating that the attempt to do this through another is an indirection indicating collusion, the authors say: "Accordingly, where a purchaser at such a sale reconveys the property at once, or within a brief period, to the executor or trustee, the presumption is that he is used as a tool or cover, and the transaction will be set aside as a constructive, if not actual fraud, citing Obert *v.* Obert, 2 Stockton Ch., 98; 1 Beasley, 423; Rosenberg's Appeal, 2 Casey, 67. And as the defect is apparent on the face of the record, a third person buying subsequently will be affected with notice and cannot hold the land. Rosenberg's Appeal."

We have examined the cases cited, and the case of Ward *v.* Smith, 3 Sandford. Obert *v.* Obert (1 Stock. Ch. and 1 Beasley) was a suit by an heir against the administrator to set aside a sale, where the purchaser had reconveyed to the administrator on the same day. The purchaser was a man of no means and had paid nothing. The price was grossly inadequate, and there was other evidence that the administrator was the real purchaser. The chancellor, passing on the facts as well as the law, set the sale aside. Rosenberg's Appeal was a case where, on settlement of their accounts, the executors were charged to have been jointly interested with a purchaser at a sale made by them, and the land having been resold at an advance, the executors were required to account for the profits. There was evidence tending to establish an arrangement for the joint purchase prior to the sale, and it was shown "the partnership between the purchaser and the executor existed immediately after the property was stricken down to him, before conveyance or payment of any of the purchase money, and whilst their relation to the property as trustees still continued." For aught that the report of the case shows to the contrary, the purchaser received and held the title in his own name, and it does not appear that he was a party to the contest.

Ward *v.* Smith was a case where one of two administrators became the purchaser at an administrator's sale, uniting with his co-administrator in making a deed to himself, and afterwards selling and conveying to a third party. Of course that third party took subject to the trust.

These cases do not establish it as a rule of law that a reconveyance to a trustee at, or shortly after the sale by him as trustee, is on its face fraudulent, so that, if the transaction be in fact fraudulent, a purchaser from him would be conclusively presumed to have notice of the fraud.

On the other hand, the cases cited against the proposition are also unsatisfactory, and are none of them as strong as the case before us. Robbins *v.* Bates, 4 Cush., 104; Blood *v.* Hayman, 13 Metc., 231, and Jackson *v.* Walsh, 14 Johns., 414, are all cases where the original deed by the trustee was executed to consummate a sale made long previously. Perhaps the strongest case on that side is Lazarus *v.* Bryson, 3 Binney, 54. There was a sheriff's sale and deed in May, and in March of the ensuing year the purchaser conveyed back to the sheriff for the same price. In September following the sheriff conveyed for a much larger consideration. It was held that the circumstance of the reconveyance was not constructive notice. Chief Justice Tilghman says: "It is a circumstance, however, which the jury might take into consideration on a question whether the defendant had actual notice."

But, as has already been said, the correctness of the charge does not depend on the existence of such a rule of law, but is to be tested by a reference to all the facts in evidence. This is not a mere reconveyance to the trustee, but is a reconveyance by way of a quit-claim, the very large consideration of $20,000 being the same in both conveyances. A pregnant circumstance is that both conveyances are made after negotiations for the loan had commenced, and after Gaston & Thomas had stated that they would lend on real estate security. With these additional circumstances, the latter testified to by the appellants themselves, and it being clearly shown that the conveyance to Bennett was without consideration, and his reconveyance made probably on the same day that Dashiell's deed reached him, we think that as matter of law Gaston & Thomas were chargeable with notice of the fraud. Notice is often a question of law, and where the evidence tending to charge parties with notice consists in part of written instruments, and in part of admitted or unques-

tioned facts connected with those instruments, we think that the question should be one of law. Especially should this be so in this case, where Gaston & Thomas deny any actual knowledge of the conveyances, but by an inflexible rule of law are to be charged with notice, just as if deeds had been presented to them by Dashiell.

But if this conclusion that the charge was under the facts of the case a proper charge, and was not objectionable as being on the weight of evidence, be questionable, we are satisfied that under the evidence the jury could not have found any other verdict than the one rendered; or rather that a different verdict would have been so clearly wrong that we would have felt it our duty, for that reason alone, to reverse a judgment based upon it. It is manifest, then, that even if the charge were erroneous, it has not operated to appellants' injury, and that it therefore constitutes no sufficient ground for reversing the judgment. G. H. & S. A. R'y Co. v. Dilahunty, 53 Tex., 212. The judgment is accordingly affirmed.

AFFIRMED.

[Opinion delivered December 20, 1881.]