**MAGNOLIA PETROLEUM CO. et al. v.
TAYLOR et al.**

No. 6072.

Court of Civil Appeals of Texas. Texarkana.

July 15, 1943.

Rehearing Denied Aug. 12, 1943.

Potter & Bezoni, of Tyler, Jones & Jones, of Mineola, and Walace Hawkins, and Roy C. Ledbetter, both of Dallas, for appellants.

W. H. Sanford and Conan Cantwell, both of Dallas, T. J. Ramey, of Sulphur Springs, Weeks, Hankerson & Surles, of Tyler,

Marion S. Church, of Dallas, Troy Smith, of Tyler, A. V. Grant, of Longview, for appellees.

JOHNSON, Chief Justice.

This suit was filed June 6, 1942, by appellees, a number of the heirs of Henry Robinson and wife, Mary Robinson, and E. B. Sullivan, who claims certain mineral interests under appellees, against appellants, the remaining heirs of Henry and Mary Robinson and claimants of mineral interests under one of the appellants; H. A. (Az). Robinson, in trespass to try title to 46.6 acres of land in Wood County, and to cancel certain deeds executed by the heirs of Henry and Mary Robinson conveying the land to G. E. Faulk, and to cancel a deed executed by G. E. Faulk conveying the land to H. A. Robinson. G. E. Faulk was made a party defendant. At the close of the evidence and by agreement of all parties the jury was dismissed and all matters of fact as well as of law were submitted to the court. From a judgment in favor of plaintiffs (appellees), defendants (appellants) have appealed.

The undisputed evidence shows that the 46.6 acres of land involved was community property of Henry Robinson and his wife, Mary Robinson. Henry died in 1910 and Mary Robinson died in 1922, both intestate. They had eight children, four of whom are living and the four deceased left surviving heirs. Upon the death of Henry Robinson, by mutual agreement of all his heirs, H. A. Robinson was placed in charge of the estate of Henry Robinson. He collected the revenues, paid the taxes and other expenses, of which he kept a record and made an accounting to the other heirs. He made no charges for his services. Prior to January 1938 the heirs of Henry and Mary Robinson had sold and disposed of all the property belonging to the estate of Henry and Mary Robinson, except the 46.6 acres now in controversy, which was unimproved, non-revenue bearing land. H. A. Robinson had continued to assess and pay the taxes on this tract, in the name of the estate of Henry Robinson. The heirs were indebted to him for such taxes and other expenses in preservation of the land, in the sum of $41.20. In January 1938 G. E. Faulk, who owned an adjoining tract on which he lived, approached H. A. Robinson to buy the 46.6 acres and offered to pay the heirs $400 cash for it. At that time H. A. Robinson owned a ¼ undivided interest in

the 46.6 acres, having previously purchased the ⅛ interest of his brother G. E. Robinson. When first approached, H. A. Robinson would not agree to accept Faulk's offer of $400. After he consulted with some of the other heirs he stated to Faulk that they, meaning himself and the other heirs, would accept Faulk's offer. H. A. Robinson then agreed with Faulk to prepare the deeds to be executed by himself and the other heirs, conveying the land to Faulk for $400 cash. Some of the heirs had moved from Wood County to different parts of the State of Texas. For convenience in executing the deeds the heirs were grouped as grantors in three separate deeds, the consideration expressed in each deed being the proportionate part of the $400 to be received by the grantors therein named, according to their interest in the land. The deeds were dated January 24, 1938. H. A. Robinson was named as grantor in one of the deeds, which he signed and acknowledged along with the other heirs named as grantors in that deed. When H. A. Robinson started to circulate the deeds among the other heirs for their execution, some of them requested payment or assurance of their part of the consideration. Whereupon H. A. Robinson out of his own personal funds paid each of the heirs so requesting their proportionate part of the consideration, after deducting therefrom, with their consent, their proportionate part of the above-mentioned $41.20 due H. A. Robinson. Having thus paid some of the heirs, H. A. Robinson decided to pay each and all the heirs their part of the consideration upon execution of the deeds by them. H. A. Robinson informed Faulk of the fact that some of the heirs were demanding payment of their part of the consideration upon execution of the deeds, and of his decision to pay all of them. Faulk made no objections to the arrangement and at least impliedly consented to it. Thereafter as each heir would execute and return the deed to him, H. A. Robinson would settle with and pay each his proportionate part of the consideration by personal check signed by H. A. Robinson. There is no dispute but that each heir so received his part of the consideration in full from H. A. Robinson. Most of the year 1938 was consumed in executing and returning the deeds to H. A. Robinson. He paid the last heir on December 21, 1938. He then informed Faulk that execution of the deeds had been completed and that he was ready to deliver

the deeds to Faulk upon Faulk's payment to him of the $400. Faulk did not have the $400, but intended to borrow it from a loan company by placing his land and the 46.6 acres of land he was purchasing from the Robinson heirs as security for the loan. Faulk failed in his efforts to borrow the $400, and H. A. Robinson continued to hold the deeds which had been executed by the Robinson heirs to Faulk. In January 1939, after Faulk had defaulted in the payment of the $400, H. A. Robinson rendered the land for taxes in his own name, and from that time began claiming it because he had his money tied up in it, according to his testimony. About three years later, "in the fall of 1941 * * * after the land had become more valuable because of an oil play in the community", according to the testimony of Faulk, he again spoke to H. A. Robinson about the land deal and offered to pay H. A. Robinson the $400 together with the interest and taxes if H. A. Robinson would deliver the deeds to him, and that H. A. Robinson then refused to deliver the deeds. Prior to that time H. A. Robinson had on March 11, 1940, leased the land for oil and gas purposes. On November 3, 1941, H. A. Robinson paid Faulk $100 in cash and Faulk conveyed the land to H. A. Robinson by deed of that date. Whereupon H. A. Robinson filed for record the deeds from the Robinson heirs to Faulk and the deed from Faulk to H. A. Robinson. There was no previous agreement, understanding or arrangement between H. A. Robinson and Faulk whereby H. A. Robinson was to acquire title to the property. The conveyance by Faulk to Robinson on November 3, 1941, was the result of a purchase and sales agreement made between them on last-mentioned date. No actual fraud or unfairness was in fact practiced or intended on the part of Faulk or H. A. Robinson against any of the Robinson heirs. There is no testimony showing that appellees knew of the fact that Faulk had failed to repay H. A. Robinson the $400 consideration, or that Faulk had conveyed the land to H. A. Robinson prior to the filing of this suit. On the other hand, there is no testimony showing that appellees did not know of such facts. The appellees were present but did not testify on trial of the case.

Appellants contend, in substance, that, in the absence of any fraud or unfairness, when appellees executed the deeds and delivered them to H. A. Robinson and ac-

cepted the purchase money from him with full knowledge that it was being paid by him, appellees thereupon parted with all title to the land and the relation of agent on the part of H. A. Robinson toward them ceased, and that there was no prohibition against the subsequent purchase by H. A. Robinson from Faulk. Appellants further contend that appellees are barred by the 4-year statute of limitation, and are guilty of laches, pleaded by appellants.

Appellees, in substance, contend that H. A. Robinson was acting for himself, and in the fiduciary capacity of an agent for the other heirs, in making the sale and conveyance to Faulk; and that the conveyance to Faulk had not been completely consummated or the agency ended at the time H. A. Robinson purchased from Faulk, because H. A. Robinson had not delivered the deeds to Faulk, therefore H. A. Robinson's purchase from Faulk, being without the knowledge and consent of appellees, came within the rule of law which prohibits an agent from purchasing the property of his principal without the knowledge and consent of the principal.

The general rule is that an agent can not himself purchase the property of his principal, either directly or indirectly through the instrumentality of another person, without the knowledge and consent of the principal. If he does do so, the conveyance may be timely avoided at the option of the principal, even though no fraud or unfairness was intended and no injury resulted to the principal. Shannon v. Marmaduke, 14 Tex. 217; Nabours v. McCord, 100 Tex. 456, 100 S.W. 1152; Allison v. Harrison, 137 Tex. 582, 156 S.W.2d 137; Texas Brokerage Co. v. John Barkley & Co., 60 Tex.Civ.App. 466, 128 S.W. 431; Viliva v. Harrison, Tex.Civ.App., 102 S.W.2d 520; Samuel v. Branche, Tex.Civ.App., 211 S.W. 841; 2 T.J. 592, Sec. 181 et seq; 3 C.J.S., Agency, p. 20, § 144; 2d Am.Jur. 204, Sec. 253 et seq. We agree that the above mentioned rule is well grounded upon sound and wholesome principles, but we do not think that it is applicable to the facts of the present case. As shown by the authorities above cited, there is no prohibition against the agent's purchasing or becoming interested in the subject matter, with the knowledge and consent of his principal. Nor does the rule prohibit the agent from subsequently purchasing from his principal's grantee after the sale has

been completed and his agency has ended, in the absence of any previous agreement or secret arrangement between the agent and grantee of his principal. H. A. Robinson in good faith and with the knowledge, acquiescence and at least the implied consent of both Faulk and appellees, advanced the purchase money to appellees for Faulk. In doing so H. A. Robinson violated no trust relationship or rule of law. Upon such facts equity would impress the land with a beneficial interest or lien in favor of H. A. Robinson against Faulk, under the rule "equity keeps an eye on the consideration that passed and protects the party who furnished it." 42 T.J. 637, Sec. 36. It is our opinion that when appellees executed and delivered the deeds to H. A. Robinson and accepted the consideration from him knowing that it was being paid by him, they parted with all interest in the land and the agency of H. A. Robinson as to them thereupon ceased, and that there was no prohibition against his subsequent purchase from Faulk. Robertson v. Chapman, 152 U.S. 673, 14 S.Ct. 741, 38 L.Ed. 592; Hermann v. Hall, 9 Cir., 217 F. 947.

As to all the appellees who were plaintiffs, cross-plaintiffs or intervenors, as well as Mary Catherine Robinson and Millie Robinson, in so far as the judgment of the trial court awards them a recovery for an undivided 61/112 interest in the 46.6 acres of land in controversy, the said judgment will be reversed and here rendered that they each take nothing by their suit. However, the judgment of the court below in so far as it correctly awards a recovery in favor of Mary Catherine Robinson for a life estate of 1/48 in the land, and in favor of Millie Robinson for a life estate of 1/24 in the said land and premises, will remain undisturbed, and in all other respects, the judgment of the court below will be affirmed. It appears without question that Mary Catherine Robinson owns a life estate in an undivided 1/48 interest in the land and Millie Robinson owns a life estate in an undivided 1/24 in said land. They were not named as grantors in either of the deeds to Faulk and did not sign same. Appellants filed disclaimers as to them in the trial court. The judgment of the trial court in their favor as to their respective life interests is not disturbed.

Reversed and rendered in part and affirmed in part.