## Mrs. Olga Schiller v. J. J. Elick.

No. A-2983. Decided May 23, 1951.
Rehearing overruled July 25, 1951.
(240 S. W., 2d Series, 997.)

C. D. Duncan, of Bellville, *Blair & Randle, M. B. Blair* and *Charles L. Krueger*, all of Austin, for petitioner.

The Court of Civil Appeals erred in reversing and rendering the judgment of the trial court and in holding that as a matter of law the evidence failed to establish a constructive or resulting trust against the oil and gas royalties in the land in question acquired by respondent, for the reason that the evidence fully and sufficiently supports the judgment of the trial court establishing and enforcing such a trust against said royalties, Houston & T. C. Ry. Co. v. Strycharski, 92 Texas 1, 37 S.W. 415; Wisdom v. Chicago, R. I. & G. Ry. Co., 231 S.W. 344; Stein v. Sims, 283 S.W. 319; 54 Am. Jur., 173, sec. 225.

*W. I. Hill,* of Bellville, *Price, Guinn & Wheat, J. V. Wheat and O. J. Cadwallader, Jr.,* all of Houston, and *Black & Stayton* and *Charles L. Black,* of Austin, for respondent.

On the question of the relationship of the parties prior to the contract of sale and the deed respondents cite: Liberty Mutual Ins. Co. v. Boggs, 66 S.W. 2d 787; Texas & Pac. Ry. Co. v. Brown, 142 Texas 385, 181 S.W. 2d 68; Denman v. Hall, 193 S.W. 2d 515.

MR. JUSTICE WILSON delivered the opinion of the Court.

The parties will be referred to as in the tiral court. The facts are stated in detail in the opinion of the Court of Civil Appeals in 235 S. W. 2d 494.

Plaintiff sues to impose a constructive trust on a 1/4 non-

participating mineral interest under land she and her husband sold and to recover damages for that portion of the disputed minerals in the hands of innocent purchasers. She alleges that defendant J. J. Elick acted in the sales transaction as agent and fiduciary for her husband (now deceased) and fraudulently procured the disputed minerals. She and her husband deeded their farm to him. He then on the same day that this transaction was closed deeded the farm to the ultimate purchaser, reserving to himself the disputed royalty.

Defendant Elick claims that he purchased the farm from plaintiff and re-sold it the same day, reserving the royalty; that he was not the agent of plaintiff and her husband but a purchaser. In a trial without a jury, the trial court found that plaintiff was entitled to recover the minerals and money damage for that portion of the minerals sold to innocent purchasers, which includes an implied finding that defendant Elick was in fact a fiduciary to plaintiff and her husband, and that he procured the minerals by fraud. The Court of Civil Appeals reversed this on the grounds that the evidence relied upon by the trial court to establish the fiduciary status was inadmissible for the reason that it varied the terms of a sales contract and deed from plaintiff and her husband to defendant, leaving no competent evidence to support the trial court's judgment. The Court of Civil Appeals also held that plaintiff's cause of action was barred by the two-year statute of limitation.

■ Our first inquiry will be whether there is any competent evidence to support the trial court's judgment. If there is, then this case is governed by the well-established law that a fiduciary may not make a profit by concealment at the expense of his principal. Johnson v. Peckham, 132 Texas 148, 120 S. W. 2d 786, 120 A. L. R. 720; Quinn v. Davis, 26 Fed. 2d 80, certiorari denied 278 U. S. 638, 49 Sup. Ct. 34, 73 L. Ed. 554.

The following facts are uncontroverted:

Mr. and Mrs. Schiller were farmers of German extraction. She spoke English brokenly. They had owned and farmed this land about twenty five years prior to this transaction. The husband's health failed and they decided to sell their farm. Defendant Elick, an acquaintance and occasional visitor who worked for the Federal Land Bank, had occasion to be on Schiller's farm in connection with servicing a delinquent note and mortgage on the adjoining farm owned by Schiller's brother. Schiller asked Elick to help sell their farm. Elick advised Schiller that the bank did not permit him to sell real estate, but

nevertheless he was permitted to assist a prospective borrower find a place to buy, and thus obtain business for the bank. Elick was not a licensed Real Estate Dealer. Elick told the Schillers that the Federal Land Bank would not make a loan unless the borrower owned ½ of the minerals and that he had a prospective purchaser who wanted a Federal Land Bank loan on it. He brought out two prospects named Rea and Hunch. Rea was Elick's brother-in-law. Subsequently Elick made a trip to the farm and told Schiller that the two prospects were not interested. Next Elick took Dr. Yelderman (the ultimate purchaser) to view the farm and on December 15 Dr. Yelderman decided to purchase, agreeing with Elick to take only 1/4 of the minerals. Dr. Yelderman knew the farm belonged to the Schillers. Elick did not tell the Schillers that Dr. Yelderman would purchase and take only 1/4 of the minerals. Three days later, on December 18, Elick took to the farm a notary public with a sales contract and warranty deed from the Schillers to himself which automatically conveyed 1/2 the minerals. Mr. Schiller executed both instruments and Mrs. Schiller executed the deed. Mr. Schiller and Elick then drove to town to a bank and placed the two instruments along with $200.00 in escrow pending title examination where they remained until January 22. Elick did not have the title examined but did deliver the abstract to Dr. Yelderman who did have it examined. On January 22, Elick executed and delivered to Dr. Yelderman a deed reserving to himself a 1/4 non-participating mineral interest, then paid the same sum of money to the Schillers that he received from Dr. Yelderman. Elick paid for an abstract and the expenses of transfer from the Schillers to him and the expenses of obtaining some curative matter required by Dr. Yelderman.

There was controverted proof offered by both sides on the question of whether Elick was a friend of the Schillers and as a result of friendship offered to help the Schillers sell their farm.

■ Defendant Elick denies any obligation to or fiduciary relationship with the Schillers. He claims that he bought and sold the property simultaneously and made a profit of the disputed minerals as a result of an arm's length trade. He does not claim, but on the contrary expressly denies, that the disputed mineral interest was a commission or compensation for agency. Elick offers considerable proof supporting his contention that this was in fact an arm's length trade, and argues it effectively here. Our problem is not to determine who is telling the truth, but only to determine whether there is any testimony which, if

believed, will support the trial court's judgment. Whether or not a fiduciary relationship exists is a question of fact. MacDonald v. Follett, 142 Texas 616, 180 S. W. 2d 334.

■ Under Elick's own testimony he undertook initially to get buyer and seller together and bring about a sale of the property. Usually this is the main function of an agent in a real-estate transaction. The term "fiduciary" as used in the Texas cases has not been reduced to precise definition. Edwards v. Strong, 213 S. W. 2d 979. The cases all involve an overreaching made possible by a misplaced confidence. It is not necessary for there to be all of the elements of agency for hire for a "fiduciary relationship" to come into being. See Fitz-Gerald v. Hull, 150 Texas 39, 237 S. W. 2d 256, for an exhaustive discussion of the term "fiduciary". See also Judge Speer's discussion in Peckham v. Johnson, 98 S. W. 2d 408, affirmed in part in 132 Texas 148, 120 S. W. 2d 786, 120 A. L. R. 720.

■ The Parol Evidence rule does not have such an application to this case as is given it by the Court of Civil Appeals. That portion of the proof concerning events which happened before the execution of the sales contract and deed does not come within the Parol Evidence rule. Here the sales contract and deed contain no provisions which the proof of the previous relationship of the parties could contradict. The Court of Civil Appeals has held that there was either an agency agreement between the Schillers and Elick or a sales agreement but not both, and that one must negative or exclude the other. Reasoning from this, they hold that, since the sales contract was written, any proof to establish a prior fiduciary relationship would alter the terms of the sales contract and for that reason be controlled by the Parol Evidence rule. The fallacy lies in the first premise, because, under this record, the trial court could find a fiduciary relationship (not necessarily agency for compensation) established before the sales contract and deed followed by a sale by the principal to his fiduciary. Equity examines such sales very closely. Shannon v. Marmaduke, 14 Texas 217; Connolly v. Hammond, 51 Texas 635; Nabours v. McCord, 97 Texas, 526, 100 S. W. 1152; Allison v. Harrison, 137 Texas 582, 156 S. W. 2d 137. The trial court was, therefore, entitled to consider all the competent proof available to determine the status of the parties before the execution of the sales contract and deed.

The real burden Elick had in this case under his testimony was to secure a finding of fact that before the execution of the

sales contract and deed any fiduciary relationship had been terminated and that he was acting for himself trading at arm's length. It is contended in support of the Court of Civil Appeals opinion that this necessarily follows as a matter of law from the application of the Parol Evidence rule to the sales contract establishing a vendor-purchaser relationship and consequently negativing a fiduciary relationship. For an early Texas case to the contrary, see Clark v. Heney, 62 Texas 511. Such a holding would prohibit Equity from ever examining a deed between a fiduciary and his principal. It has been long established that a court of equity has a right to examine transactions between a fiduciary and his principal, Gaston & Thomas v. Dashiell, 55 Texas 508, and set aside a deed resulting from a breach of duty by a fiduciary. Binford v. Snyder, 144 Texas 134, 189 S. W. 2d 471. Here the operative clauses of the sales contract and deed created the relationship of vendor and purchaser *as of the very time* they were executed. They do not, therefore, negative or contradict the existence of a prior fiduciary relationship. The converse of this is that proof of the prior fiduciary relationship does not contradict or vary the terms of the sales contract and deed.

■ Once the trial court finds as a fact the confidential relationship continuing through to the sale, Elick's breach of duty becomes clear. He should have disclosed to the Schillers that Dr. Yelderman would purchase with only 1/4 the minerals. Allison v. Harrison, 137 Texas 582, 156 S. W. 2d 137. Quinn v. Davis, supra. We are required to presume in support of the trial court's judgment that this issue of fact—the existence of a fiduciary relationship giving rise to the duty to disclose—was found by the trial court against defendant Elick. The evidence in this record will support a finding either way.

It might be argued that this holding imposes a higher standard of business ethics upon the parties to a real-estate transaction than the law has a right to expect. The growth of the law has been consistently towards higher ethical standards. Shannon v. Marmaduke, supra; Johnson v. Peckham, supra; MacDonald v. Follett, supra. Extending the term "fiduciary" beyond formal relationships (as, for example, guardian and ward) widens the possibility of attack by perjury upon legal instruments, but this has been determined as not controlling in Fitz-Gerald v. Hull, supra, and cases there cited.

■ This is a suit to recover an interest in land and is not barred by limitations under Sec. 4, Art. 5526, R.C.S. Hand v. Erring-

ton, 242 S. W. 722; Peek v. Berry, 184 S. W. 2d 272, 156 A.L.R. 949. The prayer for damages was incidental to the prayer for recovery of land and only in the event subsequent purchasers of a portion of the royalty were determined to be bona fide purchasers for value. Since plaintiff's right to sue for the royalty itself was not cut off in 2 years, her right to collect alternative damages for a conversion of a portion of that royalty made more than 2 years after the initial cause of action accrued (in fact less than one year prior to filing this suit) is not barred, as defendant urges here. Hand v. Errington, on second motion for rehearing, 248 S. W. 25. If defendant's contention were correct, he could with safety sell royalty to a bona fide purchaser which he could not himself hold, and thus by his own action change her cause against him from one for an interest in land to a suit for damages automatically barred by Sec. 4, Art. 5526, R.C.S.

This being a "no evidence" case in which defendant did not assign error as to the sufficiency of the evidence in the Court of Civil Appeals, it is ordered that the judgment of the Court of Civil Appeals be reversed and the judgment of the trial court affirmed.

Opinion delivered May 23, 1951.

Rehearing overruled July 25, 1951.