**Edrel L. CLINKENBEARD,
Plaintiff-Appellee,**

v.

**CENTRAL SOUTHWEST OIL CORPORATION, Defendant-Appellant.**

No. 74–3338.

United States Court of Appeals,
Fifth Circuit.

Jan. 29, 1976.

Rehearing Denied March 1, 1976.

---

John Guittard, Dallas, Tex., for defendant-appellant.

Craig M. Fowler, Irving, Tex., for plaintiff-appellee.

Before TUTTLE, THORNBERRY and CLARK, Circuit Judges.

THORNBERRY, Circuit Judge:

This is a suit for rescission of an assignment of an oil lease to federal lands in New Mexico that was won by appellee Clinkenbeard in a lottery conducted by the Department of the Interior. The district court found that the assignee, Central Southwest, had a fiduciary duty as an agent to Clinkenbeard, the assignor, and that, because Central Southwest took the assignment without revealing to Clinkenbeard all relevant information concerning the value of the lease, the assignment should be rescinded.

This story began when Clinkenbeard responded to Central Southwest's advertisement in Argosy Magazine, which described the possibilities for individuals to win valuable oil leases in the monthly non-competitive leasings of federal land by the Department of the Interior. Central Southwest offered to select valuable tracts coming up for leasing, handle the paper work involved in entering the individual's name in the running for the leasing of such tracts, and notify the entrant if he had won a lease. Clinkenbeard accepted the offer and dutifully sent in approximately $40 per month from September, 1971, to October, 1972.

His lucky day arrived on June 5, 1972, when he received a call from Tom Allen, President of Central Southwest, informing him that he had won a lease. Although, according to Allen, the lease was not a particularly valuable one on which there had been few filings,[1] Central

---

1. In fact the lease was one of the most heavily filed upon in the lottery and there was evidence that, at least as of the time of trial, it was worth several times what Central South-

would offer Clinkenbeard $5,020 for it. Clinkenbeard expressed hesitation and asked if other oil companies might make him better offers; Allen replied that this was possible, but he doubted it. When continued hesitation was voiced by Clinkenbeard, Allen said that he would go as high as $7,020 and an overriding royalty interest if Clinkenbeard would not wait for other offers and would make the assignment that day. At this point, Clinkenbeard agreed, and Allen made arrangements to meet him at the Dallas airport that afternoon. They did and, after an hour's discussion, concluded the assignment.

At trial, Clinkenbeard testified to the above transactions and testified also to the effect that Central Southwest, at the time it notified him that he had won, "had done everything [it] was supposed to do, that [he] understood that [it] was going to do." He also testified that, although he expected Central to make an offer for the lease, he expected that other companies would also make offers, and that he understood at the time of the telephone conversation with Allen that Central Southwest was a potential buyer and he was a potential seller.[2]

In a memorandum opinion on January 4, 1974, the district court found in favor of Clinkenbeard. The court stated that

[t]he scope of Central's agency relationship with Clinkenbeard extended to the selection of the best oil and gas leases. An agent cannot purchase and retain property of its principal unless it makes a full disclosure of all facts and circumstances within its knowledge regarding the value of the property. A full disclosure was not made as to information relevant to the value of the lease in question and Clinkenbeard is entitled to rescind the assignment of that lease. (citations omitted).

In ruling on this appeal, we have tried to keep in mind two things that it *does not* involve. First, it does not involve a determination by this court, on its own, of what should be the law concerning agency or fiduciary duty in the State of Texas. In this diversity case it is our duty to ascertain that law as it exists to the best of our abilities and to apply it, regardless of our agreement or disagreement with it. Second, this case does not involve a cause of action for fraud or misrepresentation. Although those legal theories have been averted to at various points in the proceedings, the judgment below was based instead upon a violation of fiduciary duty by reason of failure to disclose material facts. Thus no matter how unfair (or fair) any of the business practices involved may seem to us, the judgment below is not supportable unless we find that a fiduciary duty was owed by Central Southwest to Clinkenbeard and that such a duty was violated while it remained in force.

[1] Although Central Southwest raises numerous points of error, we find it necessary to consider only its contention that any fiduciary duty owed to Clinkenbeard had terminated at the time of the assignment in question. Although the district court in its opinion made no direct reference to this claim, it necessarily must have found that the agency relationship between Central and Clinkenbeard persisted to that point in time.

---

west offered. The district court also found that Allen failed to disclose the fact that there were producing wells in the vicinity of the lease and the prices paid for other leases in the area.

2. This understanding was in accordance with the brochure sent by Central Southwest to Clinkenbeard at the onset of their relationship, which stated in part:

 IF I WIN A LEASE, DO I HAVE TO SELL IT TO YOU?

Certainly not. Although we would act in your behalf in filing for the leases, we hold no direct or indirect claim to your leases or any benefits derived therefrom. When you win a lease several companies will probably offer to buy it and you can sell to whomever you wish. It should be pointed out that while an oil company may hope or wish to purchase a lease from one of its customers, such a hope or expectancy in no way constitutes a contract.

We therefore imply such a finding on the part of the court. *See* 5A Moore, Federal Practice § 52.06[1], at 2716; Wright & Miller, Federal Practice & Procedure: Civil §§ 2579, 2580; *Gilbert v. Sterrett*, 509 F.2d 1389, 1393 (5 Cir. 1975). Since such a finding represents a legal conclusion arrived at on the basis of virtually undisputed facts, it is a finding of law which is not subject to the "clearly erroneous" rule requiring limited appellate review. *State v. Keeton Packing Co.*, 487 S.W.2d 775 (Tex.Civ. App.1972), writ ref'd n. r. e.; *Cain v. Tennessee-Louisiana Oil Co.*, 382 S.W.2d 794 (Tex.Civ.App.1964), *aff'd* 400 S.W.2d 318 (Tex.1966); *Thraves v. Hooser*, 44 S.W.2d 916 (Tex.Comm.App.1932). It is one that must be reversed.

 It is generally recognized that "an agency which is intended to continue only for the performance of a particular task terminates on the performance or completion of that task." *Renchie v. John Hancock Mut. Life Ins. Co.*, 174 S.W.2d 87 (Tex.Civ.App.1943); *Jones v. Allen*, 294 S.W.2d 259 (Tex.Civ.App. 1956), writ ref'd n. r. e.; 2 Tex.Jur.2d § 14, Agency; Restatement 2d of Agency § 106; 3 Am.Jur.2d § 36, Agency. After an agency is terminated, the agent is free of any fiduciary duty to the principal arising from that relationship[3] and may then deal with the principal on an arm's length basis. *Smith v. Grant*, 483 S.W.2d 871, 876 (Tex.Civ.App.1972); *Jones v. Allen, supra; Davis v. West*, 224 S.W.2d 908 (Tex.Civ.App.1950), writ ref'd; *Magnolia Petroleum Co. v. Taylor*, 173 S.W.2d 969 (Tex.Civ.App.1943), writ ref'd; *Robichaux v. Bordages*, 48 S.W.2d 698 (Tex.Civ.App.1932), writ ref'd. The application of these principles is well illustrated by *Jones v. Allen, supra*. That case involved a real estate broker who found a purchaser for property of his principal at a price of $13,500. Three days after an earnest money contract was entered into by the principal and the purchaser, another party appeared at the broker's office and offered to pay $19,000 for the property. The broker then arranged to buy the property from the principal's purchaser for $15,000 and, moreover, induced the principal to accept the $13,500 in cash (rather than partially by note) without telling him of the $19,000 purchaser or of his own interest in the property. The principal then conveyed the property to the original purchaser, who on the same day conveyed to the $19,000 purchaser at the broker's behest and at a $4,000 profit to him. The Court of Civil Appeals held that the sole purpose of the agency, the sale of the property by the principal, was effectively accomplished as of the date the earnest money contract was signed. The agency relationship was then terminated and the broker was free to deal in the property on the same basis as any other person. Thus there was no breach of fiduciary duty despite the fact that the broker used information gained in the course of the agency to garner a profit which could have accrued to the principal had he been fully informed.

 We believe that the principle of the *Jones* case and its companions is controlling in this case.[4] The agency relationship between Central Southwest and Clinkenbeard was for the accomplishment of specific tasks: the selection of federal oil and gas properties on which

---

**3.** Of course, fiduciary duties between the parties existing as a result of other relationships between them may continue. And we note that certain duties not at issue here, such as a duty not to act as an agent after termination or a duty not to disclose confidential information, persist after the agency relationship has ended. *See* Restatement 2d of Agency §§ 386, 396.

**4.** The case of *Schiller v. Elick*, 150 Tex. 363, 240 S.W.2d 997 (1951), is not to the contrary. In that case, the defendant argued that the execution of a sales contract by his fiduciary and him operated to terminate their fiduciary relationship as a matter of law. Here, however, Central Southwest argues not that the assignment in and of itself erased the agency relationship, but that the relationship expired because it had done all that it undertook to do as an agent prior to the commencement of negotiations for assignment of the lease, as well as the assignment itself.

to bid, the entry of bids on those properties in the Department of Interior lotteries, and notification of the results. The record is devoid of evidence indicating that Central Southwest ever undertook to do anything more than this. Thus, at the moment that Tom Allen notified Clinkenbeard that he had won a lease, the agency relationship terminated as a matter of law; *all that Central agreed to do had been done.*

This conclusion is bolstered by Clinkenbeard's unequivocal testimony at trial. He stated that he recognized that Central Southwest had done everything that he expected it to do at the time they notified him that he had won a lease. And he testified that thereafter he knew that he was dealing with Central Southwest as a potential buyer of his lease and that he was a potential seller. The objective facts of the agency relationship between Central Southwest and Clinkenbeard are those that are controlling, but this testimony clearly indicates that, even subjectively, Clinkenbeard knew that his agency relationship with Central Southwest had ended.

We recognize that this conclusion may seem harsh in light of the fact that Clinkenbeard's subjective trust of Allen may have continued beyond, or even have been augmented by, Allen's notification to him that he had won a lease. But there is a very legitimate need for definiteness in the rules that govern fiduciary relationships. Such relationships impose unusual and stringent duties while they subsist. It is only fair that those subject to such duties be reasonably able to determine their extent and duration. Moreover, we note that the Texas Supreme Court has explicitly stated that

> subjective trust alone is not enough to transform arms-length dealing into a

fiduciary relationship . . .. Businessmen generally do trust one another, and their dealings are frequently characterized by cordiality . . .. If we should permit respondents to set aside their conveyances on such slender evidence, the security of contracts and conveyances in this state would be seriously jeopardized.

*Thigpen v. Locke,* 363 S.W.2d 247, 253 (Tex.1962).

■ Clinkenbeard argues, however, that the fiduciary duties once owed by Central Southwest to him as his agent may have continued to exist after the termination of the formal agency. As a strict matter, this is simply incorrect; the termination of the agency relationship terminates also the fiduciary duties which flow from it. But Clinkenbeard correctly notes that Texas courts have recognized that fiduciary or "confidential" relationships may exist despite the absence of the formalities of an agency contract. *E. g., MacDonald v. Follett,* 142 Tex. 616, 180 S.W.2d 334 (1944); *Fitz-Gerald v. Hull,* 150 Tex. 39, 237 S.W.2d 256, 261 (1951); *Schiller v. Elick,* 150 Tex. 363, 240 S.W.2d 997, 1000 (1951). Such legally recognized bonds may arise as a result of "moral, social, domestic, or merely personal [relationships]." *Fitz-Gerald v. Hull, supra* at 261. But mere subjective trust clearly is not enough to transform an arm's length relationship into a fiduciary one. *Thigpen v. Locke, supra.*

■ We can find under the evidence in this record no relationship which would fall within the principles of these Texas cases.[5] Although Clinkenbeard had engaged in a number of agency relationships with Central Southwest prior to the transaction in question, his ventures with the company had theretofore been uniformly unsuccessful. Moreover,

---

**5.** This question, unlike that of whether an agency relationship existed, must be deemed a question of fact. *Tuck v. Miller,* 483 S.W.2d 898, 905 (Tex.Civ.App.1972), writ ref'd n. r. e. But it is one that the trial court did not rule on, even implicitly, since it appears that the court relied upon the existence of a formal principal-agent relationship as the basis of its judgment. *See* page 651 *supra.* Therefore there is no finding to which we need apply the "clearly erroneous" rule.

he had never met Tom Allen prior to June 5, 1972. From these circumstances, and from the wary questioning of Allen by Clinkenbeard during their phone conversation, we would find it difficult to determine that even the subjective trust mentioned in *Thigpen* existed. Certainly there was no "moral" or "personal" relationship between Clinkenbeard and either Central Southwest or Allen which was particularly likely to inspire trust. *Compare Oak Cliff B. & T. Co. v. Steenbergen,* 497 S.W.2d 489 (Tex.Civ.App. 1973), writ ref'd n. r. e. (brother and sister); *Tuck v. Miller,* 483 S.W.2d 898 (Tex.Civ.App.1972), writ ref'd n. r. e. (long-time friends).

Instead, Clinkenbeard's own testimony portrays a fairly typical business relationship between the parties. Allen made no statements indicating that Clinkenbeard should sell to Central Southwest either because the company had helped procure the lease or because it was particularly trustworthy. To the contrary, he noted that other oil companies would be interested in the lease and might offer a better price for it, but argued that, from a purely economic standpoint, the Central Southwest offer of $7,020 and an overriding royalty interest for an immediate assignment would likely be the best offer Clinkenbeard would get. Acceptance of that offer was probably, in retrospect, a mistake. But it was a mistake which, in our view, resulted primarily from a dearth of caution and of knowledge of the relevant business facts and not from "overreaching made possible by a misplaced confidence." *Schiller v. Elick, supra* at 1000. For this, even the broadened law of fiduciary relationships represented by *Schiller* provides no remedy.

We therefore find that, because no fiduciary duty was owed by Central Southwest at the time of the assignment, reversal of the judgment in favor of Clinkenbeard is required by Texas law. It is thus unnecessary to consider the other points of error raised by appellant.

Reversed.