United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 6, 2006**

Charles R. Fulbruge III
Clerk

REVISED JULY 5, 2006

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 04-51008

UNITED STATES OF AMERICA,

Plaintiff - Appellee

versus

CHERYL LEA POPE,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before JOLLY, WIENER and DENNIS, Circuit Judges.

WIENER, Circuit Judge:

Defendant-Appellant Cheryl Lea Pope entered a conditional plea of guilty to a charge of conspiracy to manufacture methamphetamine, reserving her right to appeal the district court's denial of her motion to suppress evidence obtained during a two-stage evidentiary search of her residence. In the first stage, officers executed a search warrant purportedly issued for the purpose of uncovering evidence of a prescription-drug operation. At the outset of that stage, officers observed evidence of a methamphetamine laboratory in plain view. That evidence formed the basis of a second warrant issued to search for evidence of a meth lab, the second stage of the search.

At the suppression hearing, the district court ruled that the initial stage was unconstitutional because it was grounded in a warrant issued on the basis of stale evidence. The court nevertheless admitted the evidence from that unconstitutional search in reliance on the good faith exception to the exclusionary rule. Under that ruling, evidence from both stages of the search of Pope's residence was admitted.

The parties do not contest the district court's determination that the first stage prescription-drug warrant was unsupported by probable cause. Instead, they dispute the district court's application of the good faith exception to the exclusionary rule to the facts of this case. Specifically, Pope contends that the <u>first</u> stage of the search does not qualify under the good faith exception to the exclusionary rule, so that she is entitled to have all evidence seized during both stages of the search suppressed. The parties agree that if we reverse the district court and hold that the initial stage of the search does not qualify under the good faith exception to the exclusionary rule, Pope must be acquitted. We so hold, and thus reverse and vacate Pope's conviction and sentence.

## I. FACTS AND PROCEEDINGS

On June 25, 2003, Officer Michael Baird bought six prescription pills for ten dollars from Pope as part of an undercover investigation. There is no evidence in the record that,

2

after that single purchase, either he or any other law enforcement personnel pursued the prescription-drug matter. Then, 78 days later, Baird received a tip having nothing to do with prescription drugs, viz., that Pope was cooking methamphetamine. Baird acknowledges that he knew that he did not have probable cause to obtain a search warrant to enter Pope's home in search of evidence of a meth lab. To circumvent that hurdle, Baird immediately began drafting an evidentiary search warrant affidavit —— the first in his career —— relating solely to the moribund prescription-drug issue. Despite having done nothing about the prescription-drug buy for 78 days, Baird stayed at work past midnight preparing a prescription-drug search warrant affidavit, slept a few hours, then timed his trip to a state magistrate's home to arrive at seven o'clock the next morning.

Crucially, Baird intentionally failed to disclose to the magistrate the true purpose for which the officer wanted to search Pope's house: solely to look for and seize evidence of a meth lab. Instead, he attested under oath that he was applying for "an evidentiary search warrant... The purpose is to obtain evidence of a crime that has already been committed," i.e., evidence of the stale prescription-drug buy.[1] Only by this subterfuge was Baird able to obtain a warrant to search Pope's home for the undisclosed purpose of seeking evidence of a meth lab.

---

[1] Emphasis added.

3

Significantly, Baird did not hand off the tainted warrant to other officers; rather, he personally went to Pope's home to execute the faux search for prescription drugs accompanied by a team of officers fully dressed in the kind of protective gear used to search for meth labs. When, as anticipated, they found evidence of a meth lab in plain view, Baird immediately left the premises to obtain a second warrant, this one to search for additional evidence of the meth lab. Notably, there is no evidence in the record that the police ever looked for, much less found, any evidence of the prescription-drug crime for which Baird had obtained the initial warrant.

Pope sought to suppress all the evidence because the facts in the affidavit on which the prescription-drug warrant was issued were stale, depriving Baird of probable cause to search Pope's residence for anything. Pope also insisted that, under the particular facts of this case, the government could not rely on the good faith exception to the exclusionary rule. When Pope's counsel questioned Baird as to his actual purpose of securing the prescription-drug search warrant, the officer's testimony confirmed that he secured the warrant because he was tipped that Pope was conducting a meth cook.

The district court correctly found that (1) the initial search warrant was based on a sale of prescription drugs that occurred 78 days before Baird obtained the warrant, (2) the purpose for which the magistrate issued the warrant was not to search for evidence of

4

a meth lab, but solely to search for evidence related to the stale prescription-drug buy,[2] and (3) Baird <u>consciously withheld</u> all information about the meth lab and his suspicions in that regard, because <u>he knew that he did not have probable cause</u> for a warrant to search for evidence of a meth operation. Specifically, the district court found that Baird "had received a tip that [Pope] was cooking methamphetamine... Because he did not believe he had probable cause to search the residence for evidence of meth production, Baird did not tell the state district court judge about his suspicions." The court was also correct in holding that the prescription-drug warrant <u>lacked probable cause</u> because the information regarding the prescription-drug sale was stale.

Despite all this, the court went on to deny Pope's motion to suppress, purporting to rely on the good faith exception to the rule excluding evidence obtained in a search grounded in an invalid warrant. In so doing, the court held that none of the exceptions to the good faith exception applied.

## II.  ANALYSIS

### A.  Standard of Review

When a district court grants or denies a motion to exclude evidence, we review that court's factual findings — both explicit

---

[2] The court, in its factual findings, highlighted Baird's testimony that "[t]he search <u>warrant</u> wasn't intending to go find methamphetamine. The <u>intent</u> of the search <u>warrant</u> was to find mere evidence of a previous buy" (emphasis added).

5

and implicit —— for clear error.[3]  We review its conclusions of law de novo.[4]

**B.   Discussion**

**1.   Law**

The exclusionary rule requires courts to suppress evidence seized on the basis of a warrant that is unsupported by probable cause.[5]  The purpose of the exclusionary rule is to deter unlawful police conduct.  As the Supreme Court has repeatedly observed:

> The deterrent purpose of the exclusionary rule necessarily assumes that the police have engaged in willful, or at the very least negligent, conduct which has deprived the defendant of some right.  By refusing to admit evidence gained as a result of such conduct, the courts hope to instill in those particular investigating officers, or in their future counterparts, a greater degree of care toward the rights of the accused.[6]

The exclusionary rule is not without limits, however.  As the Court cautioned, "[w]here the official action was pursued <u>in complete good faith</u>, however, the deterrence rationale loses much of its force."[7]  Therefore, if the officers obtained the evidence "in objectively reasonable good-faith reliance upon a search warrant,"

---

[3] <u>United States v. Reyes-Ruiz</u>, 868 F.2d 698, 701 (5th Cir. 1989) (noting that we review express and implied factual findings for clear error).

[4] <u>United States v. Alvarez</u>, 127 F.3d 372, 373 (5th Cir. 1997).

[5] <u>Mapp v. Ohio</u>, 367 U.S. 343 (1961).

[6] <u>United States v. Leon</u>, 468 U.S. 897, 919 (quoting <u>United States v. Peltier</u>, 422 U.S. 531, 539 (1975)).

[7] <u>Id.</u> (quoting <u>Peltier</u>, 422 U.S. at 539) (emphasis added).

6

the evidence is admissible "even though the affidavit on which the warrant was based was insufficient to establish probable cause."[8] The "good faith inquiry is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization."[9] In conducting the good faith inquiry, the court may examine "all of the circumstances" surrounding the issuance of the warrant.[10]

"[S]uppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule."[11] The Supreme Court noted in Leon that "it is clear that in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued."[12] Among the "circumstances" to which the Court referred are those in which the magistrate issued a warrant in reliance on a deliberately or recklessly false affidavit.[13] This is because a

---

[8] United States v. Satterwhite, 980 F.2d 317, 320 (5th Cir. 1992).

[9] Leon, 468 U.S. at 922 n.23.

[10] Id.; accord United States v. Payne, 341 F.3d 393, 400 (5th Cir. 2003).

[11] Leon, 468 U.S. at 918.

[12] Id. at 922-23.

[13] Id. at 923.

7

reasonably well-trained officer with objective knowledge that a search warrant has been issued on the basis of (1) deliberate or reckless falsehoods, (2) material omissions, or (3) both, would conclude that the search is unlawful under the magistrate's flawed authorization.

## 2. Merits

> **"[I]t is one thing to admit evidence innocently obtained by officers who rely on warrants later found invalid due to a magistrate's error.  It is an entirely different matter when the officers are themselves ultimately responsible for the defects in the warrant."[14]**

As noted, the district court held that "the good faith exception applies to the... search warrant."  In its conclusions of law, the district court specified the circumstances in which the good faith exception did not apply, including "when the magistrate or state judge issues a warrant in reliance on a deliberately false affidavit."  And the government expressly argued to the district court that "[t]here was no evidence of deliberate recklessness... in the affidavit."  Pope contends that the good faith exception does not apply because Baird's representation in his search warrant affidavit that "the purpose [of the search] is to obtain evidence of a crime that has already been committed,"[15] i.e. the 78-day-old drug-buy, was deliberately or recklessly false.  This, according to

---

[14] See United States v. Reilly, 76 F.3d 1271, 1281 (2d Cir. 1996).

[15] Emphasis added.

8

Pope, is because the officer's conceded — but undisclosed — purpose of the search was only to uncover evidence of the meth lab.

Although the district court failed to make an express finding that Baird did not prepare a deliberately or recklessly false affidavit, such a finding is necessary to its holding that the good faith exception applied. "Where the trial court makes no direct reference to a claim but must necessarily have found a certain fact, the appellate court will imply such a finding" and may review the implied factual finding.[16] Review of the record, including (1) Baird's testimony at the suppression hearing, (2) the circumstances surrounding the warrant application process, and (3) the execution of the search, reveals that this implicit factual finding is clearly erroneous. Instead, the contrary conclusion is revealed: The record establishes that (1) Baird deliberately lied when he stated to the magistrate under oath that the purpose of the search was to uncover evidence of the prescription-drug buy, and (2) Baird deliberately omitted key material information when he failed to inform the magistrate of the actual purpose of the search and of the informant's tip. Moreover, because the officer who would now cloak himself in the good faith exception is Baird, the very same officer who perpetrated the deliberate falsehoods and omissions, we

---

[16] Reich v. Lancaster, 55 F.3d 1034, 1057-58 (5th Cir. 1995); see also Clinkenbeard v. Cent. S.W. Oil Corp., 526 F.2d 649, 651-52 (5th Cir. 1976) (implying a factual finding that the district court did not state, but was necessary to its conclusion).

9

are satisfied that Baird had objective knowledge of the prescription-drug warrant's illegality.

### (a)  Baird's Testimony at the Suppression Hearing

We know from Baird's own lips that he lied to the magistrate. When Pope's counsel asked Baird why he got the search warrant when he did, Baird responded that "[w]e had received information several times that Ms. Pope was cooking methamphetamine.  We received information that, at that time, there was a possibility that she was cooking methamphetamine."  And, Baird temporized, "[w]e had information that did not rise to the level of probable cause that they were cooking methamphetamine."  On hearing this testimony, Pope's counsel asked:

> Q:  So you had this information which you believed fell short of probable cause, so in lieu of that, you sought an evidentiary search warrant on the basis of the transaction that had occurred 78 days ago?
>
> A:  I applied for a search warrant, for an evidentiary search warrant for evidence of a previous narcotics purchase.
>
> Q: Were you instructed to do that by one of your superiors?
>
> A:  No, sir.  It was my idea.

When Baird further emphasized his suspicion that Pope was cooking meth at the time that he applied for the warrant, Pope's counsel asked him, "So why not tell the judge?"  Baird responded, "I did not want to -- I wanted the affidavit to stand on its own."  As Baird explained during his testimony, "[t]he search warrant wasn't

10

intending to go find methamphetamines. The intent of the <u>warrant</u> was to find evidence of a mere previous buy [of prescription drugs]."[17] These statements confirm that searching for evidence of the prescription-drug operation was <u>not</u> the purpose, or even <u>a</u> purpose, for which Baird sought the warrant at all. Instead, stating in his affidavit that the purpose of the search was for evidence of the prescription-drug operation was a tactical maneuver Baird used to avoid the probable cause prerequisite that, <u>by his own admission</u>, he could not satisfy.

Notably, there is more than Baird's affirmative testimony that leads us to this conclusion. What Baird <u>failed to say</u> during the suppression hearing is equally as revealing. When asked whether he seized <u>anything</u> from the residence, Baird replied, "Yes. We seized plain view evidence of a methamphetamine lab." He did <u>not</u> testify that he seized <u>anything</u> relating to prescription drugs. In fact, despite repeated opportunities to testify that the real purpose of the search was to uncover prescription drugs, Baird <u>never</u> testified directly to that effect. Indeed, although Baird testified that "[w]e had an ongoing methamphetamine investigation with Ms. Pope and her family," he <u>never</u> stated –– nor is there any evidence in the record –– that the prescription-drug investigation extended beyond the 78-day-old purchase of June 25.

Baird's suppression hearing testimony absolutely puts the lie

---

[17] Emphasis added.

to his <u>sworn statement</u> in the warrant affidavit that the purpose of the search was to find evidence of the previous prescription-drug buy. A careful review of the entire record makes clear that the only purpose of the search was to find evidence of the suspected meth lab. Accordingly, the district court clearly erred when it implicitly found that Baird did not deliberately or recklessly mislead the magistrate. At the same time, the district court's erroneous factual finding led to that court's legal error in holding that Baird's two-warrant search fell within the good faith exception.[18]

### (b) The Warrant Application

Even if Baird's testimony were not enough, the undisputed circumstances surrounding Baird's warrant <u>application</u> further confirm our conclusion. As soon as Baird was tipped that Pope was cooking a batch of meth, he remained on the job and worked past midnight preparing the deceptive warrant affidavit, then, by design, arrived at the issuing magistrate's house at seven o'clock in the morning to get the magistrate to sign the warrant. Obviously, none of Baird's overtime rushing would have been necessary if gathering evidence about the old undercover prescription-drug buy were the true purpose for obtaining the

---

[18] <u>Compare</u> <u>United States v. Breckenridge</u>, 782 F.2d 1317, 1322 (5th Cir. 1986)(declining to find that the warrant affidavit contained deliberately or recklessly false information because the officer's testimony at the suppression hearing was consistent with the warrant affidavit).

12

warrant:  Alone, the urgency with which Baird confected the warrant application immediately after receiving the meth tip further belies his sworn statement to the magistrate that the purpose of the search was to uncover evidence of the prescription-drug buy.

### (c)  The Execution of the Search

Even if Baird's testimony and the circumstances of the warrant application were not enough, the undisputed circumstances surrounding the <u>execution</u> of the search of Pope's home confirm beyond cavil that the purpose for obtaining the warrant was to search for a meth lab.  First, Baird and his fellow officers arrived to execute the search <u>wearing protective gear</u> in anticipation of finding a meth lab.  Second, once they found plain-view evidence of the meth lab during the initial protective sweep, Baird and a fellow officer left the premises to prepare another affidavit and obtain a second search warrant, this one <u>for the meth lab</u>.  As already noted, there is no evidence before us to suggest that the officers ever looked for —— much less found —— indicia of a prescription-drug operation.  This is confirmed by record photographs taken in the process of executing the search.[19]

---

[19] The photographs depict (1) an officer dressed in gear designed to protect the officer from hazardous materials, (2) meth lab equipment on Pope's kitchen counter, (3) a "burn barrel", (4) charred remains of pseudoephedrine blister packs, (5) a trash can likely containing materials used in the manufacture of meth (the contents of the trash can are difficult to discern from the photograph, but Baird's testimony identifies such items in a trash can)  (6) a school bus that Pope's son converted into a residence, (7) license plates, and (8) the front of Pope's residence and the yard.

13

Ultimately, this was an obviously pre-planned "warrant two-step" in which Baird misled the magistrate to gain access to a residence for which there was no probable cause to search.

### (d)   Conclusion on the Merits

The good faith exception is not an instrument that law enforcement may use to manipulate the warrant application process and thereby circumvent the constitutional requirement of probable cause.  As the Second Circuit poignantly observed, the good faith exception "is not an excuse if the police are not frank with the magistrate in the proceedings to obtain the warrant."[20]  There is simply no way for this case to be shoe-horned into the good faith exception to the exclusionary rule: Under these discrete facts, a reasonably well-trained officer in Baird's exact circumstances would have known that the search was illegal despite the magistrate's authorization.  This is because the attesting officer obtained the warrant by way of (1) a deliberate falsehood, i.e., the statement that purpose of the search was to uncover evidence of a prescription-drug operation, and (2) a deliberate omission of material fact, i.e., that the actual purpose of the search was to uncover evidence of a meth lab.  As the Supreme Court has unequivocally explained, an officer would have "no reasonable grounds for believing that the warrant was properly issued... if the magistrate or judge in issuing a warrant was misled by

---

[20] Reilly, 76 F.3d at 1281.

information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth."[21]

Further, it is critical that we suppress evidence obtained pursuant to a warrant that was procured only by misleading the magistrate as to the purpose of the intended search. This is because a judicial officer cannot properly perform his gate-keeping function of making the probable cause determination if the stated object of the requested search is false or incomplete: The facts supporting probable cause and the object of the search are inextricably linked in the probable cause calculus. Thus, for a judicial officer to determine properly whether probable cause exists to conduct a search, law enforcement must forthrightly inform such magistrate of, inter alia, the actual purpose of the search.

Finally, we cannot overemphasize the fact that the very officer who here claims good faith reliance on the warrant is the self-same officer who duped the magistrate with that officer's tainted affidavit, thus producing the equally tainted warrant on which the deceitful officer now seeks to rely. This is precisely the type of case in which suppression must be granted to serve the deterrent purpose of the exclusionary rule: Exclusion of the evidence here should ensure that future "Officer Bairds" will

---

[21] Leon, 468 U.S. at 923.

disclose <u>fully</u> and <u>truthfully</u> all the pertinent information that they are duty-bound to supply judicial officers when seeking search warrants.[22]  As this case does not fit within the good faith exception to the exclusionary rule, suppression is the appropriate remedy.

### 3.  The Dissent

With respect, we see the dissent as mischaracterizing the law, the record, and this opinion.  First, the dissent relies entirely on warrantless pretextual traffic stop jurisprudence in its critique, viz., <u>Whren v. United States</u>.[23]  Crucially, the dissent fails to address the palpable distinction between pretextual vehicle searches and the searches of private residences pursuant to a judicially authorized warrant, the kind of searches that lie at the core of the Fourth Amendment's protection.  Traffic stop cases such as <u>Whren</u> stand for the principle that, <u>when law enforcement has a legally justifiable</u> (1) presence at the scene, <u>and</u> (2) reason to stop a vehicle, the presence of the officer's ulterior or additional motive for that stop neither strips law enforcement of its legal justification for the warrantless stop nor subjects the

---

[22] <u>See</u> <u>United States v. Barth</u>, 26 F.Supp.2d 929, 941–42 (W.D. Tex. 1998) (declining to apply the good faith exception because to do so would condone an FBI policy that prohibited full and frank disclosures to members of the judiciary and the Justice Department).

[23] 517 U.S. 806 (1996).

16

fruits of the search to suppression.[24]  The Whren court refused to undertake the inquiry into whether an officer plausibly had the proper state of mind to justify a traffic stop because his actions were legally justified from the outset by probable cause.[25]

In the instant case, Baird's actions were not legally justified from the outset because he lied in and omitted material information from the affidavit with which he secured the initial warrant.  Without a valid warrant, he had no justifiable reason to be at Pope's residence in the first place.  Absent any legal justification to enter and search Pope's residence, all that remains is Baird's objectively proved purpose of searching Pope's residence for the meth lab.  If we were to rely on traffic stop jurisprudence to resolve the legality of this search, Delaware v. Prouse[26] would be more appropriate.  There, an officer with neither probable cause nor reasonable suspicion stopped a vehicle and, when he reached the vehicle, saw marijuana in plain view and seized it.[27]  The Court held that suppression was required because the officer lacked probable cause or reasonable suspicion to stop the car in the first place, without which there could be no "plain view"

---

[24] Whren, 517 U.S. at 812.

[25] Id. at 814.

[26] 440 U.S. 648 (1979).

[27] Id. at 651.

exception.[28]

The dissent also accuses this writing of advancing a subjective determination on the basis of what we perceive to be Officer Baird's state of mind. But, we obviously are not conducting a subjective inquiry into Officer Baird's mindset: Quite to the contrary, we are objectively determining whether Baird deliberately or recklessly made false statements or material omissions, or both, that misled the magistrate into signing the search warrant. To do so, we properly consider the officer's statements under oath in his affidavit, the sworn testimony he provided at the suppression hearing, and other relevant evidence. Only then must we consider whether, under the entirety of these circumstances, a reasonably well-trained officer would objectively and in good faith rely on the search warrant as legally issued. Ours is a purely objective inquiry; there is simply no other way to determine whether an officer has deliberately or recklessly misled a magistrate. Therefore, the question here is not "What was Officer Baird's subjective state of mind?", but rather "Would a reasonably well-trained officer rely on a warrant that he personally obtained by deceit?" As the Supreme Court explained in Leon, the answer is no. Indeed, to hold otherwise would be an insult to every reasonably well-trained law enforcement officer.

Further, even though we need not debate the question here

---

[28] Id. at 663.

18

because our inquiry is objective, there is solid jurisprudence indicating that <u>actual good faith</u> is a threshold inquiry when determining whether the good faith exception to the exclusionary rule applies, despite the dissent's insistence to the contrary. A solid line of cases holds that there is both a subjective and an objective component to the good faith exception. In <u>United States v. Williams</u>,[29] a pre-<u>Leon</u> case, this court held that there is a good faith exception to the exclusionary rule, and that to fit within the exception the officer must be (1) in <u>actual</u> good faith, and (2) acting in <u>objectively</u> reasonable reliance on the warrant. <u>Leon</u> did not overrule this dual standard. Indeed, <u>Leon</u> identified circumstances in which the good faith exception would not apply that turn on an officer's actual good faith. For example, the Court noted that the good faith exception would not apply if an officer obtained a search warrant with a "bare bones" affidavit, and then assigned the search to other officers who were unaware of the warrant affidavit's deficiencies.[30] Similarly, an officer who has engaged in magistrate shopping may not be entitled to the good faith exception to the exclusionary rule.[31]

Since <u>Leon</u>, we have observed that a police officer's actions must be in both subjective and objective good faith to come within

---

[29] 622 F.2d 830, 841 n.4a (5th Cir. 1980).

[30] 468 U.S. at 922 n.24.

[31] <u>Id</u>. at 922 n.23.

19

the good faith exception.[32]   The Sixth Circuit has explicitly recognized that there are two components to the <u>Leon</u> good faith inquiry:  First, whether the police actually acted in good faith, and second, whether police reliance on the warrant was objectively reasonable.[33]   Ultimately, the dissent relies heavily on the fallacious principle that actual good faith is irrelevant to the good faith exception to the exclusionary rule.   Although that proposition is not at issue here, both law and logic indicate that actual good faith is indeed a relevant consideration when deciding whether to apply the good faith exception to the exclusionary rule.

The dissent further attacks our conclusion that Officer Baird lied as engaging in "appellate fact-finding."  To that we have two responses.  First, we would respectfully remind the dissent that our purpose is to review the district court's factual findings. The district court's failure expressly to articulate its finding that Baird did not deliberately or recklessly mislead the magistrate does not insulate it from review on appeal for clear

---

[32] <u>United States v. Benavides</u>, 854 F.2d 701, 702 (5th Cir. 1988) ("The execution of the warrant in subjective and objective good faith brings the actions of the officers within the good-faith exception to the exclusionary rule.") (citing to <u>Leon</u> and <u>Williams</u>); <u>see</u> <u>also</u> <u>United States v. McQuagge</u>, 787 F.Supp. 637, 650-51 (E.D. Tex. 1992) (recognizing that the good faith exception has two components:  the requirement that the officers act objectively reasonably and the requirement that they act in subjective good faith, and ultimately suppressing the evidence because the officers did not act in subjective good faith).

[33] <u>United States v. Leake</u>, 998 F.2d 1359, 1367 (6th Cir. 1993).

error: Such a finding is indispensable to the court's legal conclusion that the good faith exception applied. Accordingly, the entire record is before us on appeal, and we are entitled to rely on that record in determining whether the district court erred factually and legally. Doing so amounts to conscientious review —— not "appellate fact-finding."

Second, the dissent attacks only our conclusion that Officer Baird lied —— it does not challenge the fact that Officer Baird omitted key material information, i.e., the purpose of his search (or, as the dissent characterizes it, Baird's "unstated, underlying motive.")[34] Thus, at the very least, the dissent would have us confect the following rule: A law enforcement officer may omit from his affidavit key material information that pertains to the purpose of a search in securing a warrant, then cynically "throw himself on the mercy" of the good faith exception to the exclusionary rule —— never mind that the entire affidavit, <u>including the officer's statement of purpose</u>, is a declaration made under oath before a judicial officer. The dissent points to no law to the effect that an officer may omit critical material information from his warrant affidavit and then seek shelter under the good faith exception. This is because there is none: The law is well established that omitting critical information from the warrant affidavit deprives

---

[34]<u>Infra</u> at __.

21

the officer of the benefit of the good faith exception.[35] (This is likely a primary reason why the dissent relies singularly and without explanation on the inapposite analogy of the warrantless pretextual traffic stop to advance its view.)

Additionally, donning blinders to an officer's false and misleading statement of purpose in his warrant affidavit would be untenable because, as noted above, a judicial officer cannot properly perform his gate-keeping function in making the probable cause determination if the stated object of the search is false or materially incomplete. Furthermore, disregarding a significant difference between the stated purpose and the actual purpose of a search ignores the Supreme Court's specific instruction in Leon that "in making [the good faith] determination, all of the circumstances... may be considered."[36]

Finally, the dissent argues that we should not consider whether Officer Baird is entitled to the Leon good-faith exception because, according to the dissent, it was not raised below and the district court "did not think for a moment" about it.[37] Review of

_____

[35]See, e.g., United States v. Davis, 226 F.3d 346, 351 (5th Cir. 2000) (noting that "[t]he necessary falsehood can be perpetrated by omission as well as commission" in applying Leon).

[36] 468 U.S. at 922 n.23 (emphasis added).

[37] We note that the dissent points to Pope's counsel's statement at oral argument that Baird thought he was doing the right thing to bolster its conclusion that Baird was in good faith under the law. If not worse, the dissent's reliance on counsel's subjective opinion and Baird's subjective belief that he was doing the right thing is patently inconsistent with its

22

the record, however, reveals that the issue of Officer Baird's deceptive behavior was before the district court. Specifically, Pope argued in her motion to suppress that the Leon good-faith exception did not apply, and the government argued in response that "[t]here was no evidence of deliberate recklessness... in the affidavit." At the suppression hearing, Pope highlighted Officer Baird's deceptive behavior in securing the warrant and, in closing, explained that:

> all of [the statements in the affidavit] are predicated upon violations of controlled substance or marijuana violations, and that's not what we have here. They are making the jump from this relatively insignificant delivery of six pills for $10 to a major drug dealer case, and there is just nothing in the affidavit that would permit somebody to make that jump... That is our argument, really.

Accordingly, the issue whether Officer Baird deliberately or recklessly disregarded the truth or omitted information was sufficiently raised for the district court's consideration.

### III. CONCLUSION

The entire search conducted at Pope's residence lacked probable cause. In executing that search, Officer Baird cannot, in good faith, reasonably rely on the flawed warrants that facially authorized it — especially when his personal actions directly

---

vociferous objection to any subjective component to making the good faith determination. More importantly, when not isolated out of context, it is obvious that Pope's counsel was not conceding that Baird was in good faith under the law. As counsel correctly explained during the suppression hearing, "good faith [cannot] be equated to the uninformed, inexperienced, naive belief that you are doing the right thing."

caused the vices in those warrants.  Accordingly, we reverse Pope's conviction and vacate her sentence.

REVERSED; SENTENCE VACATED.